## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **MODERN METAL PRODUCTS CO.** | ) | **Case No. 08-73908** |
| | ) | |
| Debtor. | ) | |
| | ) | **Honorable Manuel Barbosa** |

### FINAL ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT;(C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO JPMORGAN CHASE BANK, N.A.; AND (D) GRANT RELATED RELIEF

This matter came before this Court on the Motion of Modern Metal Products Co. ("Debtor") requesting that this Court enter an order authorizing Debtor to: (a) use certain Cash Collateral on an emergency and final basis; (b) incur Postpetition Debt on an emergency and final basis; (c) grant adequate protection and provide security and other relief to JPMorgan Chase Bank, N.A. ("Lender"); and (d) grant related relief. Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable upon entry.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn or resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

A.       On the Filing Date, Debtor filed voluntary petitions for relief under chapter 11 of the Code. Debtor has retained possession of its property and continues to operate its business as debtor in possession pursuant to Code §§ 1107 and 1108.

B.     The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over the Motion is proper under 28 U.S.C. § 1409(a).

C.     Debtor has stipulated with Lender and represented to the Court that: (1) the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship between Debtor and Lender; (2) as of the Filing Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim in an amount not less than $12,000,000 in the aggregate, exclusive of accrued and accruing Allowable 506(b) Amounts; (3) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (4) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law; (5) the Prepetition Liens, among other things, secure payment of all of the Prepetition Debt; and (6) the Prepetition Liens are First Priority Liens, subject only to Permitted Liens.

D.     Debtor represents, and the Court finds that: (1) upon the entry of this Order, Lender's interests in the Prepetition Collateral will be adequately protected; and (2) for purposes of Code §§ 506(b), 506(c), and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the liquidation value of the Prepetition Collateral was not less than $14 million. Such findings are made without prejudice to Lender's right to later: (1) assert that its interest in the Aggregate Collateral lacks adequate protection; and (2) seek a different valuation of the Prepetition Collateral.

E.     No Committee has been appointed in this Case.

F.     An immediate need exists for Debtor to use Cash Collateral and to obtain Postpetition Debt in order to enable Debtor to minimize disruption to, and avoid the immediate termination of, its business operations and maximize the value of its assets for creditors.

G.     Debtor manufactures automotive component parts for sale to, among others, Lear Corporation ("Lear"), Johnson Controls, Inc. ("JCI"), Bridgewater Interiors LLC ("Bridgewater") and Magna Seating of America, Inc. ("Magna," and together with Lear, JCI,

Bridgewater and any other customers of Debtor party to the Customer Agreements from time to time, "Participating Customers"). Pursuant to purchase orders, supply contracts and/or releases issued by the Participating Customers to Debtor (as amended from time to time, collectively, "Purchase Orders"), Debtor is obligated to manufacture such component parts ("Component Parts"), which are incorporated into components sold to original equipment manufacturers or other suppliers to the automotive industry.

> H.     If Debtor fails to meet its obligations under the Purchase Orders and timely deliver Component Parts, the Participating Customers may assert claims against the Debtor for significant damages and, thereby, reduce potential distributions to other creditors.

> I.     Subject to its agreement to assist in the orderly resourcing of the supply of the Component Parts for Participating Customers, Debtor intends to promptly commence an orderly wind-down and liquidation of Debtor's operations and assets at the Rockford Facility, while simultaneously pursuing a going-concern sale or other strategic alternative with respect to the Bronson Facility. Debtor has represented that such efforts will maximize the value of Debtor's assets under the circumstances, while reducing the amount of potential claims against Debtor (including, without limitation, claims by Participating Customers for failure to supply Component Parts under the Purchase Orders). Debtor requires continued financial support to execute such courses of action, which support is proposed to be provided by Lender pursuant to the terms of this Order and in reliance upon the accommodations provided by the Participating Customers in the Customer Agreements.

> J.     Debtor is unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of its business. Except as provided below, Debtor is unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Lender.

> K.     The terms of the Postpetition Debt have been negotiated in good faith and at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(c).

> L.     In order to prevent immediate and irreparable harm through the Termination Date, Debtor needs to use Cash Collateral and to incur Postpetition Debt as provided herein.

M.    Under the circumstances of the Case, the terms and conditions of this Order are a fair and reasonable response to Debtor's request for Lender's consent to the use of Cash Collateral and for Debtor's incurrence of Postpetition Debt, and the entry of this Order is in the best interests of Debtor's estate and its creditors.

N.    The notice provided by Debtor of the Motion, the hearing on the Emergency Order, the entry of the Emergency Order, the Final Hearing and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 362, 363 and 364(c) and was otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.    Authorization to Use Cash Collateral. Debtor is authorized to use Cash Collateral solely in accordance with and pursuant to the terms and provisions of this Order. Debtor may not use or seek to use Cash Collateral other than pursuant to the terms of this Order.

2.    Procedure for Use of Cash Collateral.

(a)    Delivery of Cash Collateral to Lender. Debtor is authorized and directed to deposit all Cash Collateral now or hereafter in its possession or under its control into the Blocked Account (or to otherwise deliver all such Cash Collateral to Lender in a manner satisfactory to Lender) promptly upon receipt thereof. Lender shall thereafter apply such Cash Collateral in accordance with Paragraph 6(d) of this Order.

(b)    Account Debtors. Without further order of court, Debtor shall, and Lender may directly, notify in writing all account debtors of existing and future accounts receivable of Debtor and instruct all such account debtors to make payments directly into the Blocked Account.

(c)    Cash Collateral in Lender's Possession. Lender is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under its control that constitute Aggregate Collateral or proceeds of Aggregate Collateral.

3.    Authorization To Incur Postpetition Debt.

(a)    Postpetition Debt Documents.    Subject to the terms and provisions of this Order (including, without limitation, Paragraph 3(c) below) and the Code, (i) the Prepetition Documents and the terms and provisions thereof (including, without limitation, insurance, financial reporting and collateral preservation covenants therein) shall be deemed in full force and effect and applicable to the Postpetition Debt and the Postpetition Collateral and (ii) any Rate Management Transactions, Financial Contracts or agreements in respect of Banking Services by and between Debtor and Lender or any of Lender's Affiliates in effect as of the Filing Date shall be deemed terminated as of the date of entry of the Emergency Order (such foregoing capitalized terms not otherwise defined in this Order having the meanings ascribed thereto in the Loan Agreement).    Without limiting the foregoing, Debtor is hereby authorized and directed to: (1) execute and deliver all documents that Lender deems reasonably necessary or appropriate to memorialize or implement the application of the Prepetition Documents to the Postpetition Debt and Postpetition Collateral; and (2) perform its obligations under and comply with all of the terms and provisions of such documents and this Order.    To the extent applicable to the Postpetition Debt and Postpetition Collateral, the Prepetition Documents shall constitute valid and binding obligations of Debtor enforceable in accordance with their terms.    To the extent there exists any conflict among the Motion, the Prepetition Documents, the Emergency Order and the terms of this Order with respect to any term of the Postpetition Debt or Postpetition Collateral, this Order shall govern and control.

(b)    Permitted Uses of Postpetition Debt.    Debtor is hereby authorized to incur Postpetition Debt: (1) solely in accordance with and pursuant to the terms of this Order; (2) solely to the extent of Excess Availability at the time of determination; and (3) solely to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable.    Notwithstanding anything to the contrary in this Paragraph 3(b), however:  (x) Debtor is hereby authorized and directed to incur Postpetition Debt to pay Allowable 506(b) Amounts, the Postpetition Charges and the Carveout when due and payable; (y) if Lender advances monies to Debtor, and Debtor uses such monies other

than in accordance with the terms and provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order; and (z) Lender's consent to any Budget shall not be construed as a commitment to continue to provide Postpetition Debt or permit use of Cash Collateral after the occurrence of an Event of Default or beyond the Termination Date, regardless of whether the aggregate funds described in the Budget have been expended.

   (c) <u>Principal Terms of Postpetition Debt</u>.

    (i) <u>Maximum Amount</u>.  The maximum outstanding principal amount of Aggregate Debt at any time shall not exceed $12,500,000, exclusive of Postpetition Charges, Allowable 506(b) Amounts and the Carveout.

    (ii) <u>Interest</u>.  The Postpetition Debt shall bear interest at a per annum rate equal to the "CB Floating Rate" (as defined in the Loan Agreement) <u>plus</u> 4.00%.  Accrued interest on the Postpetition Debt shall be payable, in arrears, on the first day of each calendar month and upon the Termination Date.

    (iii) <u>Monthly Servicing Fee</u>.  A non-refundable monthly loan servicing fee of $5,000 shall be due to Lender from Debtor.  Such fee shall be payable, in advance, upon entry of the Emergency Order (pro rated if occurring mid month) and on the first day of each calendar month until the Postpetition Debt is fully, finally and indefeasibly repaid to Lender.

    (iv) <u>Letters of Credit</u>.  As Postpetition Debt, Lender may issue, and Debtor may request the issuance of, up to $1,000,000 of "Facility LCs" (as defined in the Loan Agreement) for the benefit of Debtor.  All fees and charges for Facility LCs under the Loan Agreement shall be applicable; <u>provided</u>, <u>however</u>, the fronting fee due with respect to all Facility LCs issued as Postpetition Debt shall be 0.5% of the face amount thereof.

    (v) <u>Postpetition Debt Closing Fee</u>.  Debtor shall pay to Lender a non-refundable closing fee of $375,000, which amount shall be fully earned upon entry of the Emergency Order, but payable in accordance with the following schedule: (A) $125,000 shall be due and payable upon entry of the Emergency Order; (B) $125,000 shall be due and payable upon January 16, 2009, unless the Aggregate Debt is fully, finally and indefeasibly repaid to Lender on or prior to such date; and (C) $125,000 shall be due and payable upon February 13, 2009, unless

the Aggregate Debt is fully, finally and indefeasibly repaid to Lender on or prior to such date.

(vi)   <u>Maturity</u>.  The Postpetition Debt shall mature and be due and payable by Debtor in full on the Termination Date.

(vii)   <u>Additional Covenants</u>.  Debtor shall comply with the Performance Covenants and the Sale Covenants, in addition to the other terms of this Order and the Prepetition Documents.

(viii)   <u>Customer Agreements</u>.  At Lender's election, no Postpetition Debt shall be incurred until the Customer Agreements have been (A) duly authorized, executed and delivered by all Participating Customers and (B) approved by this Court on a final basis.

(ix)   <u>Guarantor</u>.  The Guaranty and related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Lender pursuant to Code § 363 or additional financing by Lender pursuant to Code § 364.  The Guarantor shall be and shall remain liable for the guaranteed obligations under the Guaranty, including, without limitation, all Postpetition Debt.  Debtor is hereby authorized and directed to immediately cause the Guarantor to reaffirm the Guaranty and related security documents in form and substance satisfactory to Lender, including confirmation of such Guarantor's obligations to guaranty repayment in full of all Aggregate Debt and waiver by the Guarantor of any defenses and counterclaims relating to the Guaranty and related security documents.  With respect to the Guarantor, Lender shall have the right to apply any and all proceeds received from such Guarantor to reduce the Prepetition Debt and Allowable 506(b) Amounts, and the Postpetition Debt at such times and in such manner as determined by Lender in its sole discretion.  At Lender's election, no Postpetition Debt shall be incurred hereunder until the Guarantor has reaffirmed its obligations in writing as stated above.

(d)   <u>Superpriority Administrative Expense Status; Postpetition Liens</u>.  The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Case that are incurred under any provision of the Code.  In addition, Lender is hereby granted the Postpetition Liens to secure the Postpetition Debt.  The Postpetition Liens:  (1) are and shall be in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d),

are and shall be First Priority Liens (subject only to Permitted Liens) without any further action by Debtor or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; and (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case.  Notwithstanding the foregoing, Debtor is authorized and directed to execute and deliver to Lender such financing statements, mortgages, instruments and other documents as Lender may deem necessary or desirable from time to time.  Any such financial statements, mortgages, instruments, or other documents filed by Lender shall be deemed to have been filed as of the Filing Date.

       4.    <u>Carveout Terms</u>.  With respect to each Carveout Professional:  (a) the Carveout for such Carveout Professional shall consist of (i) the lesser of (A) the aggregate weekly line item amounts as provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date, and (B) the aggregate amount of allowed fees and expenses of such Carveout Professional that accrue during the period commencing on the Filing Date and ending on the Termination Date; <u>plus</u> (ii) $25,000 for professional fees and disbursements of counsel to Debtor first accruing after the Termination Date; (b) the Carveout, as it pertains to such Carveout Professional, shall be reduced on a dollar-for-dollar basis by any Postpetition Debt advanced, or Cash Collateral remitted, by or at the consent of Lender on account of fees and expenses of such Carveout Professional; (c) all property of the estate not subject to an unavoidable lien in favor of Lender (other than avoidance actions and any proceeds thereof) shall be used to pay any fees or expenses of such Carveout Professional before payments of such fees or expenses are made from proceeds of the Postpetition Debt or the Aggregate Collateral; (d) Lender shall have the right to establish "Reserves" (as defined in the Loan Agreement) with respect to borrowing availability for the unpaid Carveout of such Carveout Professional in Lender's discretion; (e) upon the Termination Date, and with the exception of the $25,000 portion of the Carveout which Lender has agreed to fund on or after the Termination Date with respect to post-Termination Date allowed fees and expenses of Debtor's counsel, Lender shall have no further obligation to fund any fees or expenses of such Carveout Professional that accrued

on, before or after the Termination Date; and (f) the Carveout shall not include, and no Postpetition Debt or Aggregate Collateral may be used to pay, any fees or expenses incurred by any entity (including, without limitation, Debtor, any Committee or the Carveout Professionals), in connection with claims, actions or services adverse to Lender, or their respective interests in the Aggregate Collateral, including, without limitation, (1) preventing, hindering or delaying Lender's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred, (2) using or seeking to use Cash Collateral or selling any other Aggregate Collateral without Lender's consent, (3) incurring indebtedness without Lender's consent, or (4) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Lender. Each Carveout Professional shall submit to Debtor and Lender, copies of their respective Carveout invoices for fees and expenses on a monthly basis, in arrears, not later than the 10th day of each month. Nothing herein shall be construed as consent by Lender to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any another Carveout Professional in the Budget.

5.     Termination of Right To Use Cash Collateral and To Incur Postpetition Debt.

(a)     Termination Date. Unless extended by the Court upon the written agreement of Lender, this Order and Debtor's authorization to use Cash Collateral and incur Postpetition Debt pursuant to this Order will automatically terminate on the Termination Date without further notice or order of court.

(b)   Rights Upon Termination.  Upon the Termination Date, without further notice or order of the Court, at Lender's election:  (1) the Aggregate Debt shall be immediately due and payable; (2) Lender shall be entitled to apply or set off any cash in Lender's possession or control to the Aggregate Debt in accordance with Paragraph 6(d) of this Order, until such Aggregate Debt is indefeasibly and finally paid in full; and (3) Debtor shall be prohibited from using any Aggregate Collateral for any purpose other than application to the Aggregate Debt in accordance with Paragraph 6(d) of this Order, until such Aggregate Debt is indefeasibly and finally paid in full.  On the fifth business day after the Termination Date:  (1) at Lender's election, without further order of the Court, Lender shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Prepetition Documents, the Code and applicable nonbankruptcy law with respect to the Aggregate Collateral; and (2) Debtor shall be authorized and directed to surrender the Aggregate Collateral and to otherwise cooperate to assist Lender in the exercise of the rights and remedies available to Lender under the Prepetition Documents, the Code and applicable nonbankruptcy law with respect to the Aggregate Collateral (provided, however, that during the five (5) business day period following the Termination Date, Debtor shall have the right to seek an order of this Court determining that the Termination Date has not occurred, but that during such five (5) business day period, Debtor may not use Cash Collateral unless such use is agreed to in writing by Lender, and Lender shall have no obligation to advance Postpetition Debt to Debtor).

6.   Adequate Protection of Interests of Lender in the Prepetition Collateral and the Prepetition Liens.  As adequate protection of the interests of Lender in the Prepetition Collateral:

(a)   Priority of Prepetition Liens/Allowance of Lender's Prepetition Claim.  Subject to the terms of Paragraph 8(a) of this Order:  (1) the Prepetition Liens shall constitute First Priority Liens, subject only to the Postpetition Liens and the Permitted Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor,

enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law; (4) Lender's claim with respect to the Prepetition Debt as of the Filing Date shall for all purposes constitute an allowed secured claim within the meaning of Code § 506 in an amount not less than $12,000,000 in the aggregate, exclusive of accrued and accruing Allowable 506(b) Amounts; and (5) Debtor hereby releases, discharges, and acquits Lender and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of the entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Documents or otherwise.

(b)      Replacement Liens. Lender is hereby granted the Replacement Liens as security for payment of the Prepetition Debt. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be First Priority Liens (subject only to the Postpetition Liens and Permitted Liens) that are properly perfected, valid and enforceable without any further action by Debtor or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, Debtor is authorized and directed to execute and deliver to Lender such financing statements, mortgages, instruments and other documents as Lender may deem necessary or desirable from time to time.

(c)      Allowed Code § 507(b) Claim. If and to the extent the adequate protection of the interests of Lender in the Prepetition Collateral granted to Lender pursuant to this Order proves insufficient, Lender shall have an Allowed Claim under Code § 507(b) in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Case (other than Lender's claims under Code § 364) that are incurred under any provision of the Code, including Code §§ 503(b), 506(c), 507(a), or 552(b); and (2) the claims of any other party in interest under Code § 507(b).

(d)    Application of Cash Collateral.    Lender, at its election, is authorized to apply all Cash Collateral now or hereafter coming into Lender's possession or control as follows: (1) first, to payment of Prepetition Debt consisting of Allowable 506(b) Amounts; (2) second, to payment of other Prepetition Debt; (3) third, to payment of Postpetition Charges; and (4) fourth, to payment of all other Postpetition Debt. All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to: (a) object solely to such applications to Allowable 506(b) Amounts under and in accordance with Paragraph 7(a) of this Order; and (b) seek a determination in accordance with Paragraph 8(a) below that such applications to other Prepetition Debt resulted in the payment of any unsecured prepetition claim of Lender. Any amounts disgorged in connection with any such objection or determination shall be first applied to repay Postpetition Debt. All applications to Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee.

(e)    Prohibition Against Use of Cash Collateral. Debtor will not use, be permitted to use, or seek to use  Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363 for the use of such Cash Collateral: (1) Lender has consented to such order; (2) at the time of the entry of such an order, there is no Aggregate Debt outstanding, and no obligation of Lender to extend additional Postpetition Debt; or (3) such Cash Collateral is first used to immediately and indefeasibly finally pay the Aggregate Debt in cash in full.

(f)    Prohibition Against Additional Debt.  Debtor will not incur, be permitted to incur, or seek to incur debt secured by a lien which is equal to or superior to the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364 for the incurrence of such debt: (1) Lender has consented to such order; (2) at the time of the entry of such order, there is no Aggregate Debt outstanding, and no obligation of Lender to extend additional Postpetition Debt, or (3) such credit or debt is first used to immediately and indefeasibly finally pay the Aggregate Debt in cash in full.

(g)    No Surcharge.  Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its business, including all

-12-

expenses that are reasonable and necessary to preserve the value of the Aggregate Collateral, through the period for which the Budget runs. In reliance on the representation by Debtor that the Budget includes all items that are reasonable and necessary to preserve the value of the Aggregate Collateral and therefore includes all items potentially chargeable to Lender under Code § 506(c), Lender has agreed to the entry of this Order. Debtor represents that the Budget also includes items that are not chargeable to Lender under Code § 506(c). In the exercise of its business judgment, and in consideration of Lender's agreement to allow Debtor to use Cash Collateral and the proceeds of the Postpetition Debt in accordance with this Order, to pay both the items which are, and which are not, chargeable to Lender under Code § 506(c), Debtor agrees that, effective upon entry of this Order, there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Lender. Therefore, effective upon entry of this Order, at no time during the Case shall the surcharge provisions of Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) be imposed upon Lender or any of the Aggregate Collateral for the benefit of any party in interest, including, without limitation, Borrower, Guarantor, any Committee, any of the Carveout Professionals, or any Trustee.

(h)    Right to Credit Bid.  Pursuant to Code § 363(k), Lender shall have the right to use the Aggregate Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

(i)    Plan.  Unless Lender consents thereto, Debtor shall not file or be permitted to file a plan in this Case that does not provide for the indefeasible and final payment of the Aggregate Debt in full in cash on the earlier of:  (1) the effective date thereof; and (2) the Termination Date.

(j)    Waiver of Right to Return/Consent to Setoff.  Without Lender's prior written consent, Debtor hereby waives its rights:  (1) to return any of the Aggregate Collateral pursuant to Code § 546(h); (2) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (3) to consent to setoff pursuant to Code § 553.

(k)   Indemnification.   Debtor shall be deemed to continue to indemnify and hold harmless Lender pursuant to Section 9.6 of the Loan Agreement and as otherwise set forth in the Loan Agreement.

(l)   No Marshaling.   Neither Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

7.   Miscellaneous Provisions.

(a)   Notice of and Objections to Allowable 506(b) Amounts and Postpetition Charges.  Lender shall provide, by electronic mail, Debtor's counsel, counsel for any Committee, and the United States Trustee with copies of all invoices sent by Lender's counsel (edited to delete any attorney-client or other confidential information) or Lender's other professionals (including, without limitation, any consultants, appraisers and financial advisors retained by Lender) to Lender with respect to the professional fees and related costs and expenses asserted as Allowable 506(b) Amounts or Postpetition Charges that are incurred from and after the Filing Date.  Any such party may object to the reasonableness of any such fees, costs and expenses.  However, any such objection shall be forever waived and barred unless, within 10 days of receipt of the invoice to which the objection relates: (1) the objection is filed with the Court and served upon Lender and its counsel; and (2) the objection describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs and expenses (and is not an objection to the retention itself). Any hearing on an objection to the fees, costs and expenses of Lender set forth on any invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection.  The disallowance of any such fees and expenses shall not affect Lender's right to collect such amounts from any person or entity other than Debtor.

(b)   Force and Effect of Prepetition Documents.  Subject to the terms and provisions of this Order and the Code, the Prepetition Documents and the terms and provisions thereof shall be deemed in full force and effect with respect to, and applicable to, the Aggregate Debt and the Aggregate Collateral.  To the extent there exists any conflict

among the Motion, the Emergency Order, the Prepetition Documents and the terms of this Order, this Order shall govern and control.

(c)     Modification of Stay.   The automatic stay of Code § 362 is hereby modified with respect to Lender to the extent necessary to effectuate the provisions of this Order, including (i) after the Termination Date, to permit Lender to exercise its rights contemplated by Paragraph 5(b) above and (ii) upon entry of this Order, to affect the termination of any outstanding Rate Management Transactions, Financial Contracts, or agreements in respect of Banking Services as described in Section 3(a) above.

(d)     GWB Intercreditor Agreement.  Notwithstanding anything to the contrary, upon entry of this Order: (i) GWB shall be deemed to have consented to the terms and provisions of this Order (including, without limitation, to the granting of the Postpetition Liens and Replacement Liens to Lender); (ii) all interests of GWB in the Aggregate Collateral, whether now existing or hereafter obtained (as prepetition security interests, replacement liens or otherwise), are and shall be junior to the Prepetition Liens, Postpetition Liens and Replacement Liens and shall not constitute Permitted Liens; (iii) any obligations of Lender under the GWB Intercreditor Agreement to apply, turnover or otherwise dispose or treat Cash Collateral or any other Aggregate Collateral in a manner inconsistent with any such action or determination taken or made by Lender in accordance with the terms of this Order shall be deemed waived by GWB; (iv) any disposition of Aggregate Collateral occurring in accordance with the Sale Covenants or otherwise with Lender's consent shall be deemed to also have the consent of, and be free and clear of all liens, claims, encumbrances and other interests of GWB; and (v) without Lender's prior written consent, GWB shall not be entitled seek relief from the automatic stay of Code § 362 with respect to any Aggregate Collateral.    Without limiting the foregoing, the terms and provisions of the GWB Intercreditor Agreement remain in full force and effect.

(e)     Approval of Customer Agreements.  Notwithstanding any other provision of this Order, the Customer Agreements (and all of the terms, conditions and covenants in the Customer Agreements) were previously approved by this Court on a final basis.  Debtor is authorized and directed to enter into, execute, deliver and perform, and

comply with all of the terms, conditions and covenants of, and to take all actions necessary and appropriate to implement, the Customer Agreements.

(f)  Financial Information.  Debtor is hereby directed to deliver to Lender such financial and other information concerning the business and affairs of Debtor and any of the Aggregate Collateral as may be required pursuant to the Prepetition Documents and as Lender shall reasonably request from time to time, in addition to providing Lender, on the first business day of each week through the Termination Date, with a written comparison of Debtor's actual performance during the prior week ending Friday compared to such prior week as described in the Budget.  Debtor is also directed to allow Lender or its agents access to its facilities at any reasonable time for the purpose of enabling Lender to inspect and audit the Aggregate Collateral and Debtor's books and records.

(g)  Insurance.  Debtor is directed to deliver to Lender evidence, satisfactory to Lender, that the Aggregate Collateral is insured for the full replacement value thereof, that all insurance policies required by the Prepetition Documents are maintained in full force and effect with respect to the Aggregate Collateral and Aggregate Debt, and that Lender is named as loss payee on all such property insurance policies and named as additional insured on all such liability policies, as its interests may appear.

(h)  No Waiver.  This Order shall not constitute a waiver by Lender of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including without limitation:  (1) its right to later assert that, notwithstanding the terms and provisions of this Order, any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) its right to later assert a claim under Code § 507(b).  Lender's failure, at any time or times hereafter, to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith.  No delay on the part of Lender in the exercise of any right or remedy under this Order, the Prepetition Documents, the Code, or applicable nonbankruptcy law shall preclude any other or further exercise of any right or remedy.  Lender shall not be deemed to have suspended or waived any of its rights or remedies under

this Order, the Prepetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Lender (as applicable), and directed to Debtor.

(i)    "Responsible Person." By accepting the Budget submitted to it by Debtor and by taking actions in compliance with this Order, Lender shall not:  (1) be deemed to be in control of the operations or liquidation of Debtor; or (2) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor.

8.    Binding Effect.

(a)    Stipulations and Findings. The stipulations, representations, and findings in Paragraphs C and D of this Order, and the relief granted by and release contained in Paragraph 6(a) of this Order, and the finality provided for in Paragraph 6(d) of this Order, shall be binding on all parties in interest in the Case and their respective successors and assigns (including, without limitation, any Trustee), subject only to the right of any Committee to commence an adversary proceeding within sixty (60) days of the date of the Emergency Order challenging such stipulations, representations, findings, release or payments.

(b)    Order. Except as provided in Paragraph 8(a), this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee.  If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if this Order is terminated, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect:  (1) subject only to Paragraph 8(a) of this Order, the stipulations, representations, findings in Paragraphs C and D and the relief granted by and release contained in Paragraph 6(a) of this Order; and (2) the priority, validity, enforceability or effectiveness of any lien, security interests or any other benefit or claim authorized hereby with respect to any Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies,

privileges and benefits, granted hereto including the liens and priorities granted herein, with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order or the agreements of Debtor and Lender herein or in the Prepetition Documents.

(c)   Survival.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case:  (1) confirming any chapter 11 plan; (2) converting the Case to a case under chapter 7; or (3) dismissing the Case. The terms and provisions of this Order, including the rights granted Lender under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Aggregate Debt and other Obligations are indefeasibly and finally paid in cash in full and discharged.

(d)   Entry of Order.  Debtor is directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Lender, Debtor's other secured creditors, Debtor's twenty largest unsecured creditors, Lear, JCI, Bridgewater and Magna, and the United States Trustee, which service shall constitute adequate and proper notice of the entry of this Order.

Honorable Manuel Barbosa
United States Bankruptcy Judge

Dated:  December 17, 2008

# EXHIBIT A

## DEFINED TERMS

      1.    ***Access Agreement***.  That certain Access and Security Agreement, dated December 1, 2008, among Borrower, Lear, JCI, Bridgewater and Magna to which Lender has consented, together with all amendments, modifications or supplements to such agreements that are acceptable to Lender in its sole discretion.

      2.    ***Accommodation Agreement***.  That certain Accommodation Agreement, dated December 1, 2008, among Debtor, Lender, Lear, JCI, Bridgewater and Magna, together with all amendments, modifications or supplements to such agreements that are acceptable to Lender in its sole discretion.

      3.    ***Aggregate Collateral***.  Collectively, the Prepetition Collateral and the Postpetition Collateral.

      4.    ***Aggregate Debt***.  Collectively, the Prepetition Debt and the Postpetition Debt.

      5.    ***Allowable 506(b) Amounts***.  Interest at the "CB Floating Rate" (as defined forth in the Loan Agreement) plus 4.00% per annum, and all fees, costs, expenses, and other charges of Lender due or coming due under the Prepetition Documents or otherwise in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), including, without limitation, all out-of-pocket filing and recording fees, attorneys' and paralegals' fees and expenses, field examinations costs and charges, appraisal fees, external and internal audit fees and expenses, closing fees, unused facility fees, letter of credit fees, and all other fees, costs, expenses and other charges incurred by Lender or otherwise arising under the Prepetition Documents with respect to the Prepetition Debt, including such fees, costs and charges incurred before, on, or after the Filing Date in connection with:  (a) the negotiation, preparation and submission of this Order and any other order or document related hereto; and (b) the representation of Lender in this Case in connection with the Prepetition Debt or the Prepetition Liens.

      6.    ***Blocked Account***.  Account number 645474529 at Lender with respect to the "Modern Metal Division" and account number 645474511 at Lender with respect to the "Bronson Division."

      7.    ***Bronson Facility***.  Debtor's manufacturing and processing facility (together with all leased and owned real estate) located in Winsted, Connecticut.

      8.    ***Budget***.  The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, for different amounts or different periods, all as may be agreed to by Lender from time to time, without the necessity for further Court approval.

9.    ***Carveout***.  For the purposes of enabling Debtor's estates to pay allowed fees and disbursements of the Carveout Professionals as may be awarded from time to time pursuant to Code § 330, the aggregate amount set forth in Paragraph 4 of this Order; provided, however, that the Carveout may be used only subject to the terms and provisions of Paragraph 4 of this Order.

10.    ***Carveout Professionals***.  Collectively: (a) Ungaretti & Harris LLP, counsel for Debtor; (b) Crossroads Management Group, financial advisor for Debtor; and (c) counsel for any Committee.

11.    ***Case***.  This chapter 11 case and any superseding chapter 7 case of the Debtor.

12.    ***Cash Collateral***.  All cash arising from the collection or other conversion to cash of the Aggregate Collateral, including all "cash collateral," as that term is defined in Code § 363(a), and any other cash in which Lender has an interest, including all deposits subject to setoff rights in favor of Lender.  To the extent any such cash collected or received is not clearly identifiable as attributable to Prepetition Collateral or Postpetition Collateral, such cash shall be deemed to be proceeds of Prepetition Collateral.

13.    ***Code***.  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

14.    ***Committee***.  Any official creditors' committee appointed to represent unsecured creditors in this Case pursuant to Code § 1102.

15.    ***Customer Agreements***.  Collectively, the Access Agreement and the Accommodation Agreement.

16.    ***Emergency Order***.  That certain Order Authorizing Debtor To: (A) Use Cash Collateral On An Emergency Basis; (B) Incur Postpetition Debt On An Emergency Basis; (C) Grant Adequate Protection And Provide Security And Other Relief To JPMorgan Chase Bank, N.A.; And (D) Grant Related Relief, entered in this Case on December 3, 2008.

17.    ***Event of Default***.  At Lender's election, any one or more of the following: (a) the occurrence of any Event of Default first arising after the Filing Date under Article VII of the Loan Agreement (other than by reason of Article VII, paragraph (f) or (g)); (b) Debtor fails to perform any of its obligations in strict accordance with the terms of this Order; (c) Debtor fails to comply with any of the Performance Covenants; (d) Debtor fails to comply with any of the Sale Covenants; (e) Debtor, without Lender's consent, seeks the use of Cash Collateral other than in accordance with the terms of this Order; (f) Debtor, without Lender's consent, files a motion to incur debt secured by a lien with priority equal to or superior to the Postpetition Liens or which is given superpriority administrative expense status under Code § 364(c) other than in accordance with the terms of this Order; (g) Debtor files a motion to conduct a Code § 363 sale of all or part of the Aggregate Collateral on terms

-2-

unacceptable to Lender; (h) any key management of Debtor is removed or lost; (i) Debtor files a chapter 11 plan that is not acceptable to Lender; (j) the occurrence of any default or event of default under the Customer Agreements by Debtor or Participating Customers, or any breach by Debtor or any Participating Customer of any term, provision or obligation in any of the Customer Agreements; (k) there is a deadlock among any board of directors of Debtor on any material issue; (l) any representation or warranty made by Debtor in any certificate, report or financial statement delivered to Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (m) the Case is converted to a case under chapter 7 of the Code; or (n) a Trustee is appointed or elected in the Case, or an examiner with the power to operate Debtor's business is appointed in the case.

18. **_Excess Availability_.** At a time of determination, the greater of: (a) "Availability" (as defined in the Loan Agreement) taking into account the applicable Aggregate Debt and Aggregate Collateral; and (b) such amount determined Lender in its sole discretion.

19. **_Filing Date_.** December 1, 2008.

20. **_Final Hearing_.** The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

21. **_First Priority Liens_.** Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to avoidance or subordination pursuant to any provisions of the Code, applicable nonbankruptcy law, or any agreement.

22. **_Guarantor_.** MMP Holdco LLC and its successors and assigns.

23. **_Guaranty_.** Article XV of the Loan Agreement.

24. **_GWB_.** Collectively, GWB U.S. Holdings Limited and GWB U.S. Group Limited, together with their respective predecessors, successors, assigns, affiliates, participants, co-lenders, representatives, agents, managers, members, directors, officers, employees, attorneys, consultants and other advisors.

25. **_GWB Intercreditor Agreement_.** That certain Second Amended and Restated Subordination Agreement, dated September 28, 2007 (as amended, modified or supplemented from time to time), by and among Debtor, Guarantor, Lender and GWB U.S. Holdings Limited.

26. **_Loan Agreement._** That certain Amended and Restated Credit Agreement, dated as of June 30, 2007, by and among Debtor, Guarantor and Lender (as amended, supplemented or otherwise modified from time to time).

27.    *Motion*.  The motion, filed by Debtor, seeking entry of the Emergency Order and this Order.

28.    *Obligations*.  The "Secured Obligations," as that term is defined in the Loan Agreement.

29.    *Performance Covenants*.  Debtor shall be required to:  (a) as of Friday, December 5, 2008, and each Friday thereafter, generate collections in an amount equal to at least 95% of the amount set forth in the Budget for the cumulative period commencing on the Filing Date and ending on each such testing date, (b)  as of Friday, December 5, 2008, and each Friday thereafter, generate new, invoiced sales in an amount equal to at least 95% of the amount set forth in the Budget for the cumulative period commencing on the Filing Date and ending on each such testing date, and (c) as of Friday, December 5, 2008, and each Friday thereafter, maintain aggregate expenditures no greater than 105% more than the aggregate amount projected by the Budget to be expended during the cumulative period commencing on the Filing Date and ending on each such testing date.

30.    *Permitted Liens*.  Collectively, (a) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date:  (i) had priority under applicable law over the Prepetition Liens, (ii) were not subordinated by agreement or applicable law, and (iii) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date; (b) the Carveout; and (c) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a).

31.    *Postpetition Charges*.  All fees, costs, expenses, interest at the rate set forth in Paragraph 3(c)(iv) of this Order, and other charges due or coming due in connection with the Postpetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), including, without limitation, all out-of-pocket filing and recording fees, attorneys' and paralegals' fees and expenses, field examinations costs and charges, appraisal fees, external and internal audit fees and expenses, closing fees, unused facility fees, letter of credit fees, and other fees, costs, expenses and other charges incurred by Lender or otherwise arising under this Order or the Prepetition Documents with respect to the Postpetition Debt, including such fees, costs and charges incurred before, on, or after the Filing Date in connection with:  (a) the negotiation, preparation and submission of this Order and any other order or document related hereto; and (b) the representation of Lender in this Case in connection with the Postpetition Debt or the Postpetition Liens.

32.    *Postpetition Collateral*.  All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including, effective upon entry of this Order, claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, and all other Collateral (as that term is defined in the Loan Agreement) and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

33.   ***Postpetition Debt.***   (a) All indebtedness or Obligations of Debtor to Lender incurred on or after the Filing Date pursuant to this Order or otherwise, including any advances made by Lender to pay Allowable 506(b) Amounts, plus (b) the Postpetition Charges.

34.   ***Postpetition Liens.***   First Priority Liens in the Aggregate Collateral, subject only to Permitted Liens.

35.   ***Prepetition Collateral.***   All of the "Collateral" (as that term is defined in the Loan Agreement) existing as of the Filing Date subject to the Prepetition Liens, and all proceeds, rents, issues, profits and products thereof.

36.   ***Prepetition Debt.***   (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date (including, without limitation, all "Secured Obligations" as defined in the Loan Agreement), and including all fees, costs, interest, and expenses as and when due and payable; plus (b) all Allowable 506(b) Amounts.

37.   ***Prepetition Documents.***   The Loan Agreement and all "Loan Documents" (as that term is defined in the Loan Agreement).

38.   ***Prepetition Liens.***   Lender's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Liens.

39.   ***Replacement Liens.***   First Priority Liens in the Aggregate Collateral granted to Lender pursuant to this Order, subject only to the Postpetition Liens, Prepetition Liens and the Permitted Liens.

40.   ***Rockford Facility.***   Debtor's storage and manufacturing facilities (together with all owned and leased real estate) in and around Rockford, Illinois.

41.   ***Sale Covenants.***   Debtor shall be required to: (a) on or before December 17, 2008, obtain an order from this Court (in form and substance acceptable to Lender) authorizing a sale or other disposition of all or substantially all of the Aggregate Collateral at the Bronson Facility on terms (including, without limitation, as to price, contingencies and timing of closing) acceptable to Lender in its sole discretion; (b) on or before December 19, 2008, consummate such sale and finally and indefeasibly repay the Aggregate Debt with the gross proceeds of such sale of Aggregate Collateral.

42.   ***Termination Date.***   At Lender's election, the earliest to occur of: (a) the date on which Lender provides, via facsimile or overnight mail, written notice to counsel for Debtor, counsel for Participating Customers and counsel for any Committee of the occurrence of an Event of Default, pursuant to which notice Lender has elected to declare the occurrence of the Termination Date and (b) February 20, 2009.

43.   ***Trustee.***   Any trustee appointed or elected in the Case.

**<u>EXHIBIT B</u>**

**<u>BUDGET</u>**

See attached.

Modern Metal Products Co
Filed Budget