UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re: In re Modern Metal Products Co., | Bankruptcy No. 08 -73908 |
|---|---|
| Debtor. | Chapter 11 |
| | Judge Manuel Barbosa |

### MEMORANDUM OPINION

This matter comes before the Court on the Debtor's objection to Rockford Broach's claim for administrative expense under 11 U.S.C. § 503(b)(9). For the reasons set forth herein, the Court grants the Debtor's objection to Rockford Broach's 503(b)(9) claim.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### FACTUAL & PROCEDURAL BACKGROUND

The Debtor filed a voluntary petition with this Court for reorganization under Chapter 11 of the Bankruptcy Code on December 1, 2008 (the "Petition Date"). On or about May 18, 2009, Rockford Broach sent a Proof of Claim to the Debtor and to the Committee of Unsecured Creditors, asserting a right to be paid $6,129.60 as an administrative expense pursuant to Section 503(b)(9) on account of goods sold to the Debtor during the 20-day period immediately preceding the Petition Date (the "Rockford Broach Claim"). On June 19, 2009, the Debtor filed a 503(b)(9) Report which objected to the Rockford Broach Claim and asserted that the basis of

the claim was not based on "goods sold." Rockford Broach filed a timely response on July 2, 2009, reasserting its right to have the Rockford Broach Claim treated as an administrative expense.

The essential facts do not appear to be contested. The parties do not dispute that the claim asserted is on account of processed steel products delivered by Rockford Broach to the Debtor during the period from November 11, 2008 through December 1, 2008 (Debtor's Objection ¶ 5; Resp. to Debtor's Objection ¶ 2). The Debtor provided the raw materials for these steel products. The Debtor sent Rockford Broach flat pieces of steel, which Rockford Broach processed by broaching and deburring into two separate parts with teeth and then returned these finished parts to the Debtor. (Resp. to Debtor's Objection ¶¶ 2-3, 8; Debtor's Objection ¶¶ 9, 13). The parties disagree, however, on whether Rockford Broach "sold" "goods" to the Debtor, as such terms are used in Section 503(b)(9), or if instead it merely performed a service on behalf of the Debtor.

## DISCUSSION

Section 503(b)(9) provides that, after notice and a hearing, there shall be allowed as administrative expenses "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9) (2009). This provision was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, but the Bankruptcy Code does not provide a definition for the word "goods." Other bankruptcy courts that have analyzed the provision have followed the lead of a leading treatise and concluded that the definition of "goods" as used in Article 2 of the Uniform Commercial Code ("UCC") should

apply. See, e.g., In re Goody's Family Clothing, Inc., 401 B.R. 131, 134 (Bankr. D. Del. Feb. 6, 2009); In re Plastech Engineered Prods., Inc. (Plastech II), 397 B.R. 828, 836 (Bankr. E.D. Mich. Dec. 10, 2008); 4 Collier on Bankruptcy, ¶ 503.16[1], 503-79 (15th ed. Rev. 2008). As the court in Goody's reasoned, Article 2 of the UCC governs sales of goods in 49 states, and "'where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense.'" Goody's at 134 (quoting Standard Oil Co. of N.J. v. United States, 221 U.S. 1, 59 (1911)). The Court agrees, and will look to the UCC definition of "goods."

Rockford Broach contends that the steel blanks it received from the Debtor had only "nominal value," but were formatted into valuable "goods" by its processing and were then delivered to the Debtor. Rockford Broach seems to be arguing that the steel blanks were not "goods" until converted into "goods" by its processing, whereupon it then "sold" them to the Debtor. "Goods" is defined in the Uniform Commercial Code as "all things that are movable at the time of identification to a contract for sale. The term includes future goods, specially manufactured goods, the unborn young of animals, growing crops, and other identified things attached to realty as described in Section 2-107. The term does not include information, the money in which the price is to be paid, investment securities under Article 8, the subject matter of foreign exchange transactions, or choses in action." U.C.C. Art. 2 §103(k). The steel blanks, both before broaching and afterward, were identifiable and movable, as demonstrated by the fact that they were in fact delivered, and were therefore "goods" under the Uniform Commercial Code. See, e.g., Tuteur Assocs., Inc. v. Taubensee Steel & Wire Co., 861 F. Supp. 693, 697 (N.D. Ill. 1994) (holding that steel wire rods were "clearly 'goods'" for purposes of Illinois' version of the Uniform Commercial Code). While the Debtor concedes that Rockford Broach

added value to the steel materials, (Debtor's Objection ¶ 13), Section 503(b)(9) does not apply to all situations where a party gives value, but rather only when goods have been sold to the debtor. See In re Plastech Engineered Prods., Inc., 2008 WL 5233014, at *2 (Bankr. E.D. Mich. Oct. 7, 2008) ("In the Court's view, the word received modifies the word goods in § 503(b)(9). It is the goods and not the value that must be received by the debtor to trigger § 503(b)(9)."); see also In re Goody's Family Clothing, Inc., 401 B.R. 131, 136 (Bankr. D. Del. Feb. 6, 2009). In this case, Rockford Broach did not sell the steel to the Debtor. Rather, the Debtor sent steel blanks to Rockford Broach, Rockford Broach processed them, and then Rockford Broach delivered them back to the Debtor. There is no allegation that the steel blanks were a "gift" from the Debtor or that the blanks were "sold" to Rockford Broach, or anything to indicate that title to the steel passed at any time from the Debtor to Rockford Broach or from Rockford Broach back to the Debtor. Although it is clear that the unprocessed steel had less value to the Debtor than the processed steel, it is equally clear that the unprocessed steel had some value. Debtor went out and procured it, and only transferred possession of it to Rockford Broach for Rockford Broach to process. The steel blanks are different, then, from the waste material that a plastics company collected from the debtor's premises, processed and then resold to the debtor in In re Plastech Engineered Prods., Inc. (Plastech II), 397 B.R. 828, 839 (Bankr. E.D. Mich. Dec. 10, 2008). While in that case the plastic waste was worthless to the debtor and the debtor really did give the raw material away, in this case the steel blanks clearly had some value. The Debtor gave the blanks to Rockford Broach to process and not to keep, and thus it was a transfer of possession and not title. Without the passing of title, there could be no sale. See, e.g., U.C.C. Art. 2 § 106(1) (defining a sale as the "passing of title from the seller to the buyer for a price"); see also In re Goody's at 136 ("However, section 503(b)(9) does not provide for the allowance of an

administrative claim for goods shipped. Instead, section 503(b)(9) allows an administrative claim for goods sold."). Rockford Broach argues this case is like 3Com Corp. v. Elec. Recovery Specialists, Inc., 104 F. Supp. 2d 932 (N.D. Ill. 2000), where the court found a contract for the sale of goods where a contractor gathered scrap steel in a company's factory, sold the steel to third parties, and gave 70% of the proceeds back to the company. However, that case involved not only gathering and processing of scrap, but sale to third parties. There it made sense to treat the transaction as a sale of the scrap to the contractor and a further sale to third parties, since title had to pass to the contractor for the contractor to be able to further sell the scrap to the third parties. There is not the same rationale to infer a transfer of title from the Debtor to Rockford Broach when there are only two parties. Why would there be a presumption that title passed to Rockford Broach when both parties knew the steel would go back to the Debtor after processing? Nor do the parties allege that they intended to transfer title when they transferred possession. For example, there is no indication that they documented a sale and repurchase of the steel blanks.

    Rockford Broach argues that in cases where one party by contract provides a mixture of goods and services, courts applying the UCC should look to the "predominant purpose" of the transaction in deciding whether the contract was for the sale of goods or services. Thus, Rockford Broach points to cases where the sale of a grain bin was treated as predominantly a sale of goods even though the seller also performed services by installing and erecting the bin, Meeker v. Hamilton Grain Elevator Co., 442 N.E.2d 921 (Ill. App. Ct. 1982), or where the printing of magazines was treated as a sale of goods even though the purchaser provided certain "materials" that were used in the printing. Gross Valentino Printing Co. v. Clarke, 458 N.E.2d 1027 (Ill. App. Ct. 1983). But these cases are easily distinguishable because in each case the

provider of services was also transferring or adding some form of material: in <u>Meeker</u>, the parts for the bin, and in <u>Gross Valentino</u>, presumably at least the ink if not also the paper.1 Even assuming, <u>arguendo</u>, that the "predominant purpose" test applies to the "sale" of "goods" as used in the Bankruptcy Code, it is a doctrine that only applies when there is a <u>mixed</u> provision of goods and services.2 While Rockford Broach certainly added value by processing the steel blanks, there are no allegations that the company added any materials or otherwise provided any goods additional to the steel blanks to the Debtor during the processing of the steel. Therefore, this case is closer to the facts in <u>Meyer v. ERJ, Inc.</u>, 1997 WL 158354 (N.D. Ill. 1997), where the court found that a contract was for services where the 'buyer' provided rolls of unfinished satin cloth, which the 'seller' printed, cut and sewed into comforter/sheet sets.3

## CONCLUSION

For foregoing reasons, the Court GRANTS the Debtor's objection to Rockford Broach's 503(b)(9) claim.

THEREFORE, IT IS ORDERED that

the foregoing constitutes findings of fact and conclusions of law as required by <u>Fed. R. Civ. P.</u>

---

1 It is unclear from the case exactly what "materials" were provided by the buyer. <u>Gross Valentino</u> at 1028.
2 At least one court has held that the "predominant purpose" test from UCC case law should not apply to Section 503(b)(9). The court in <u>In re Plastech Engineered Prods., Inc. (Plastech II)</u>, 397 B.R. 828, 836 (Bankr. E.D. Mich. December 10, 2008), noted that the "predominant purpose" test was developed in UCC cases because an "all-or-nothing" approach was needed, for example, to determine whether the UCC should apply to a given contract. The <u>Plastech II</u> court noted that, in contrast, there was no need to use an all-or-nothing approach for Section 503(b)(9), and nothing in the statute indicated such a test should be used. Rather, because the statute refers to "the value of any goods received," where there was a mixed goods/services contract Section 503(b)(9) would apply to the value of the goods sold but would ignore the value of service provided. <u>Id.</u> at 837-38. But this alternative analysis would make it even more clear that Section 503(b)(9) does not apply to this transaction. Even if the Court were to split the value of goods sold and services provided, because no additional goods were provided during the processing, the "value of goods received" would be zero.
3 Even if some very minimal amount of goods were added by Rockford Broach's processing of the steel, the facts in this case seem closer to the facts in <u>NIM Plastics Corp. v. Standex Int'l Corp.</u>, 11 F. Supp. 2d 1003 (N.D. Ill. 1998), where the court found "the essence of the contract was service" where the purported 'seller' took rolls of film from the 'buyer,' coated them with a matte finish and delivered them back to the 'buyer.' <u>NIM Plastics</u> at 1006.

52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: September 16, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge