UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re Modern Metal Products Co.,<br><br>Debtor. | Bankruptcy No. 08-B-73908<br><br>Chapter 11<br>Judge Manuel Barbosa |
|---|---|

### MEMORANDUM OPINION

This matter comes before the Court on the Debtor's motion to convert its case to Chapter 7. For the reasons set forth herein, the Debtor's motion is granted.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts do not appear to be in dispute. The Debtor filed a voluntary petition for relief under Chapter 11 with this Court on December 1, 2008. On January 7, 2009, the U.S. Trustee

appointed a Committee of Unsecured Creditors (the "Committee") to represent the interests of unsecured creditors. Rather than attempt to reorganize as a functioning company, from an early point in the case the Debtor ceased active business operations and instead focused on the liquidation of its assets. It has generally worked together with the Committee in this process of liquidation, and by this point has liquidated most of its real and personal property. Its remaining unliquidated assets mostly consist of potential avoidance actions and other claims against certain creditors, including several insiders of the Debtor. The Committee admits that the Debtor has generally cooperated with the Committee in the process of liquidation and in the process of preparing a liquidation plan and related disclosure documents, at least until the Debtor filed the current motion to convert.

The Debtor's exclusive period to file a plan was twice extended, but expired on June 1, 2009. The Committee filed a liquidation plan (the "Plan") and Disclosure Statement on August 14, 2009. The Court entered a scheduling order on September 8, 2009, ordering the Committee to serve its proposed final version of the Disclosure Statement upon all parties by September 11, 2009, setting October 6, 2009, as the deadline by which objections must be filed, and setting October 7, 2009, for a hearing on the approval of the Disclosure Statement. The Committee filed a revised and proposed final Disclosure Statement on September 11, 2009. On September 29, 2009, the U.S. Trustee filed an objection to the Disclosure Statement, and on October 6, 2009, creditors Korea Modern Metal Co., Ltd ("KMM"), Menessa and Virtual Engineering, Inc. filed an objection joining in the U.S. Trustee's objection to the Disclosure Statement. On October 6, 2009, the Committee filed a response to the objections, together with an amended Plan and an amended Disclosure Statement.

At the October 7, 2009 hearing, the U.S. Trustee and KMM requested time to review the Committee's response and revisions to the Plan and Disclosure Statement, and the hearing was continued to October 14, 2009. On October 13, 2009, the Debtor filed the current motion to convert the case to Chapter 7. At the October 14, 2009 hearing, the Debtor claimed that it had an absolute right to convert the case under Section 1112(a),[1] and that conversion would render the pending motion to approve the Disclosure Statement moot. The Committee indicated surprise that the Debtor had filed the motion to convert at this stage, and stated that the Committee was confident that it could address the U.S. Trustee's and KMM's objections to the Disclosure Statement, and that the overwhelming majority of creditors supported the Plan. The Court set November 18, 2009, to hear arguments on the motion to convert, and in particular on the question of whether the Debtor had an absolute right to convert. The Committee filed a response and sur-response to the Debtor's motion to convert, and the Debtor filed a reply to the Committee's response. At the November 18, 2009, hearing, the Court heard arguments from the Debtor and the Committee. Also at the hearing, the U.S. Trustee indicated that the U.S. Trustee did not oppose the Debtor's motion to convert.

## DISCUSSION

### A. Express Statutory Limitations on Voluntary Right to Convert From Chapter 11 to 7.

11 U.S.C. § 1112(a) provides that:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—
(1) the debtor is not a debtor in possession;

---

[1] Unless otherwise noted, all section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

(2) the case originally was commenced as an involuntary case under this chapter; or
(3) the case was converted to a case under this chapter other than on the debtor's request.

11 U.S.C.A. § 1112(a) (West 2009). None of the criteria set forth in clauses (1) to (3) of the subsection apply to the Debtor, and therefore the Debtor asserts that it must be allowed to convert its case. An additional requirement is listed in Section 1112(f), which states that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter," but the Debtor asserts that there is no reason it would not qualify as a debtor under Chapter 7.

**B. Judicial Power to Reject a Debtor's Request to Convert.**

Although certain cases, usually relying on language in the legislative history, have stated that a "debtor has the absolute right to convert his or her Chapter 11 case to a Chapter 7 case" under section 1112(a), e.g., Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.), 844 F.2d 1142, 1161 (5th Cir. 1988), it is clear that there are limits on the right. First, as noted above, the section itself places certain express limitations or qualifications on the right in clauses (1) to (3) of Section 1112(a) and in Section 1112(f). Second, as stated in the Bankruptcy Rules, a Debtor's request to convert does not have an automatic or self-executing effect, but instead "shall be on motion filed and served as required by Rule 9013." Fed. R. Bankr. P. 1017(f)(2). The conversion is effected by order of the court, not by mere notice from the Debtor. See, e.g. In re Adler, 329 B.R. 406, 409 (Bankr. S.D.N.Y. 2005) ("If the Debtor had an automatic right to conversion, notice of the pending conversion would not be needed, creditors would only need to receive notice of the new

chapter after the conversion of the case."). Finally, the statute does not state that a court "'shall' honor [a debtor's] request," or otherwise indicate a Congressional intent to limit a court's discretion or equitable powers.² Addler, 329 B.R. at 408-09. Instead, "Congress intended that bankruptcy courts should have the discretion of allowing a debtor to convert a case." Results Sys. Corp. v. MQVP, Inc., 395 B.R. 1, 6 (E.D. Mich. 2008).

In Marrama v. Citizens Bank of Mass., the Supreme Court examined the circumstances in which a court may deny a debtor's request to convert a case from Chapter 7 to Chapter 13 under Section 706(a). 549 U.S. 365 (2007). Section 706(a) contains very similar language to the language in Section 1112(a).³ The Court noted that under §1307(c) a case under Chapter 13 could be dismissed upon a showing of "cause," including a showing of "pre-petition bad faith conduct" on the part of the debtor. Id. at 373. The bankruptcy court had found that the debtor had concealed certain assets and transfers by failing to list them or misstating their values in his schedules in the initial Chapter 7 case. Id. at 369-70. The Court held that, where it was clear that the case would

---

²Compare, for example, Section 1112(b), which states in clause (1) that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause," and which lists specific examples of "cause" in clause (4). 11 U.S.C.A. § 1112(b) (West 2009) (emphasis added).

³"The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C.A. § 706(a) (West 2009). Also, the limitation in Section 706(d) that "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter," is identical to the language in Section 1112(f).

eventually be dismissed or reconverted back to Chapter 7 if the motion to convert was granted, a court could deny the motion to convert. The Court found authority in part on the rationale that, if the case was bound to be dismissed or reconverted in Chapter 13, then as a practical matter the debtor 'would not qualify as a debtor' under Chapter 13. As the Court stated, "[i]n practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of pre-petition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." Id. at 373-74. The Court's other rationale was that the court could essentially preemptively grant a reconversion back to Chapter 7 by denying the original motion to convert. As the Court stated, "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief." Id. at 375.

One additional reason that the Court was able to rely on in Marrama, but that would not apply here, is that allowing a bad-faith debtor to convert from Chapter 7 to Chapter 13, even if for a short time, could harm creditors, since any amount of time spent as a debtor-in-possession would "provide a debtor with an opportunity to take action prejudicial to creditors" Id. The same concern does not exist where, as here, the debtor seeks to convert from Chapter 11 to Chapter 7. The Debtor is currently a debtor-in-possession, and is actually agreeing to relinquish control over the estate by converting to Chapter 7. However, the holding in Marrama did not depend on this factor alone. If

it is clear that the granting of the motion to convert would serve no other purpose than to waste time and resources, or that the Debtor's only purpose in filing the motion was to delay, then under the reasoning of Marrama, the Court could certainly deny the Debtor's motion.

## C. Application

### 1. Lack of Cause

Unlike the cases the Committee has cited, the Committee has alleged no bad acts by the Debtor other than the filing of the motion to convert. The Committee has not alleged a pattern of delay or abuse or any independent reason why the case should be dismissed. Instead, it admits that the Debtor has been very cooperative throughout the process. Thus, the two fairly recent cases that the Committee cites in which a bankruptcy court denied a motion to convert from Chapter 11 to Chapter 7 under Section 1112(a), Monroe Bank & Trust v. Pinnock, 349 B.R. 493 (E.D. Mich. 2006), and In re Adler, 329 B.R. 406 (Bankr. S.D.N.Y. 2005), are easily distinguishable. In Addler, the debtor had filed the motion to convert in direct response to a motion by the U.S. Trustee to dismiss the debtor's case for cause under Section 1112(b). Therefore, in Addler, the court simply addressed the motion to dismiss before the motion to convert, and found that cause existed to dismiss the case, in part because the debtor had failed to propose a confirmable plan after over two and a half years. 329 B.R. at 410. In Pinnock, a creditor had not yet filed a motion to dismiss, but had included a request to dismiss the case in its objection to the conversion. The court held that the bankruptcy court could treat the objection as a motion to dismiss under Section 1112(b), and could determine whether cause existed to dismiss the case before deciding whether to allow the conversion. 349 B.R.

at 497. In contrast, in this case, no creditor is seeking to dismiss the Debtor's case, and the Committee has suggested no reason why the case could or should be dismissed under Section 707. The Committee accuses the Debtor of having secret ulterior motives in filing the motion, and of having been influenced by insider creditors, but if the Debtor had the right to convert and there was no other reason that the case could be dismissed under Section 707, then the argument that the Debtor did not qualify as a debtor under Chapter 7 fails.

### 2. The Plan has not been Confirmed

The Committee also cites In re Pero Bros. Farms, Inc. to support its argument that letting the Debtor convert now, when the Committee has proposed a Plan that it feels is supported by all creditors, "would give a debtor in possession the power to veto or negate any plan it disapproves and, thereby, deprive creditors of their statutory right under § 1121(c) to file a plan and have that plan confirmed by the court." 91 B.R. 1000, 1001 (Bankr. S.D. Fla. 1988). However, a key difference from this case is that in Pero Bros. the court had already entered a confirmation order. Id. at 1000. Therefore, the reasoning that the court used was that the "confirmation of this plan *immediately and automatically* vested title, possession and control of the debtor corporation and all of its assets in a Liquidator as provided in the plan," and thus the debtor was no longer a "debtor in possession" as required by Section 1112(a)(1). Id. 1000. In contrast, here, while a plan was proposed, it has not been confirmed or even voted on. Nor is it definite that the Plan will ever be confirmed. The Disclosure Statement has not yet been approved, and is still subject to pending objections by the U.S. Trustee and at least one creditor.

The Court recognizes that it can be frustrating to spend time and effort drafting and negotiating a plan only to have the debtor exercise its right to convert the case shortly before confirmation. But the same is true of negotiating a contract where one party gets cold feet or changes its mind before signing. Just because the parties spent time on it does not make it an enforceable contract. Moreover, if the Committee's argument were accepted, at what point would a debtor lose its right to convert? At what point would the debtor lose its right to change its mind? Debtors might fear losing their right to convert unintentionally. The Court prefers the bright-line time frame of actual confirmation. Actual confirmation also unequivocally demonstrates the support of all creditors and the confirmability of the plan. Although the Committee attests that all creditors 'support the plan,' they can always change their minds before voting, and there remain objections by the U.S. Trustee and at least one creditor which have not yet been withdrawn.

The Court also notes that, even if a debtor were to choose to convert in response to a proposed plan, they only get one shot. It is not as if they had the power to keep rejecting plans until a plan they liked was proposed. Once they convert to Chapter 7, it is final. Section 706(a) only gives a debtor the right to convert to Chapter 11 if it has not already exercised its right to convert under Section 1112. It is true that such a debtor's case could be reconverted to Chapter 11 under Section 706(b), but conversion under that provision is only allowed in the Court's discretion. Therefore, there is little risk that the Debtor could reconvert the case back to Chapter 11 in the future or otherwise regain control over the estate.

**3. Discretionary Conversion Based on the Equities**

The Committee's remaining argument is that, because the Court has broad discretion to convert the case from Chapter 7 to Chapter 11 under Section 706(b), the Court could choose to immediately reconvert the case or preemptively do so by denying the Debtor's conversion request. Section 706(b) states that "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." 11 U.S.C.A. § "706(b) (West 2009). The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." Willis v. Rice (In re Willis), 345 B.R. 647, (B.A.P. 8th Cir. 2006) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977), 1978 U.S.C.C.A.N. 5963; S. Rep. No. 989, 95th Cong.2d Sess. at 94 (1978), 1978 U.S.C.C.A.N. 5787). However, even if the Court were willing treat the Committee's request as a timely and proper request to convert the case from Chapter 7 to Chapter 11 under the principles of Marrama and Pinnock, the Court would not use its discretion to approve the request. The Court prefers to defer to the determination of the Debtor, as debtor-in-possession, of the best interests of the estate, especially where the U.S. Trustee has indicated no objection. In Section 1112(a), as well as other sections, Congress has granted a clear right to debtors to decide which chapter their case should proceed under, and the Court is loathe to overturn that choice without a strong showing of an abuse of the system or clear detriment to parties in interest. The Committee points to all of the time and effort spent on preparing the Plan that would be 'wasted' if the case is converted. Yet, despite the Committee's contentions to the contrary, there is still no guaranty that the Plan will be confirmed. The creditors have not yet voted, and there are still pending objections by the U.S.

Trustee and at least one creditor to the Disclosure Statement. Moreover, the time and efforts already expended are sunk costs, and should not really affect the decision of what is the best path to follow at this moment.

It is not clear whether a liquidation would in fact be more efficient in Chapter 7 or Chapter 11. As a general matter, Chapter 7 Trustees are sometimes branded with an image as looking only for "low hanging fruit" and abandoning too many claims, while a liquidating trust might be perceived as overzealously pursuing every claim in order to run up legal bills. See, e.g., Chad P. Pugatch et al., The Lost Art of Chapter 11 Reorganization, 19 U. Fla. J.L. & Pub. Pol'y 39, 63 (2008). Thus the Debtor argues that it wishes to convert to Chapter 7 because it thinks a Chapter 7 liquidation will be more efficient and save on costs, while the Committee argues that insiders of the Debtor pushed it to convert because they thought a Chapter 7 Trustee would be less likely to pursue claims against them. Each party also argues that the procedural and administrative costs of Chapter 7 or Chapter 11, respectively, are cheaper. However, the Court is not interested in overgeneral and potentially stereotypical arguments. Both a liquidating trustee and a Chapter 7 Trustee have the same fiduciary duty to maximize the repayment of creditors. Moreover, the Code shows that the choice is presumptively given to the debtor. Section 1112(a) does not mandate that the Court make an independent evaluation of what is in the best interests of creditors in granting a debtor's request to convert.[4] The Committee has not alleged any specific reason why a Chapter 7 Trustee would be

---

[4]Compare, for example, Section 1104(a)(3), where the Code mandates that the court appoint a Chapter 11 trustee or examiner rather than convert or dismiss a case if "the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate."

unable to maximize the repayment of creditors. For example, it has not alleged any actual impropriety, such as an improper influence by the Debtor over a potential Chapter 7 Trustee. There are also safeguards in the Code to protect creditors from a trustee that does not fulfill its duties. For example, Section 701 requires that any trustee appointed by the U.S. Trustee be "disinterested," so if there is any connection or improper influence by the insiders over the trustee, the creditors could object to his appointment. Or, if the trustee does not protect creditors' interests, they can seek his removal under Section 324(a). "[T]he unjustifiable failure to pursue a cause of action belonging to the bankruptcy estate constitutes not only a breach of the trustee's statutory duties but also 'cause' to remove the trustee under § 324." In re Consolidated Industries Corp., 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005). As to administrative and procedural costs, there are too many unknown future variables to be able to predict with accuracy. Despite the Committee's optimism, there is no certainty as to when or if the Plan could be confirmed, or how many revisions will be required. The Committee claims that the Plan can provide for subordination of insiders' claims whereas in Chapter 7, the trustee would have to initiate an adversary proceeding. Yet, unless the insiders acquiesce, the issue would still have to be litigated in Chapter 11 in the context of the confirmation hearing. The Debtor has stated that it believes conversion to Chapter 7 is in the best interests of the estate, and the Committee has alleged no plausible facts that would overturn that evaluation or support denying the Debtor its statutory right to convert.

Therefore, the Court finds that the Debtor has a right to convert the case to Chapter 7 and the Committee has not demonstrated that there is cause to dismiss the case or reconvert it to Chapter 11.

## CONCLUSION

For the foregoing reasons, the Debtor's motion to convert to Chapter 7 is granted.

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: December 30, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge