UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MODERN METAL PRODUCTS CO., | ) | Case No. 08-73908 |
| | ) | Hon. Manuel Barbosa |
| Debtor. | ) | |
| | ) | Hearing Date: July 14, 2010 |
| | ) | Hearing Time: 9:30 a.m. |

VERIFIED FINAL APPLICATION FOR ALLOWANCE
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF
CROSSROADS MANAGEMENT GROUP LLC,
BUSINESS AND FINANCIAL ADVISORS TO THE DEBTOR

NOW COMES Crossroads Management Group LLC ("Crossroads"), business and financial advisors to Modern Metal Products Co. (the "Debtor"), pursuant to Sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 5082-1 of the Bankruptcy Court for the Northern District of Illinois and requests the entry of an order allowing a final award of compensation and reimbursement of expenses in the above-captioned case (the "Final Application"). In its Final Application, Crossroads requests the allowance and payment of compensation for services rendered to and expenses advanced on behalf of the Debtor during the period of August 1, 2009 through March 31, 2010. For this period, Crossroads seeks (A) the allowance of fees in the amount of $66,112.50 for 176.30 hours of work and reimbursement of expenses in the amount of $990.40, for a total of $67,102.90, and (B) the payment of $27,905.70, which represents the difference between the sum of fees and expenses sought to allowed and the amount of payments already made by the Debtor to Crossroads between August 1, 2009 and December 31, 2010.

In support of the Final Application, Crossroads states as follows:

1735945-1

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Final Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

2. The statutory predicates for the relief requested herein are Sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Bankruptcy Court for the Northern District of Illinois Local Rule 5082-1.

## INTRODUCTION

3. On December 1, 2008 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization under the Bankruptcy Code. On or about December 30, 2009, the Court entered an order converting this case to chapter 7 liquidation effective January 11, 2010 [Dkt. No. 445]. On or about January 11, 2010, Daniel Donahue was appointed interim chapter 7 trustee for the Debtor's bankruptcy estate.

4. The Debtor's Section 341(a) meeting of creditors in the converted bankruptcy case was held on February 11, 2010, at which time one creditor requested an election of a chapter 7 trustee. The interim trustee adjourned the meeting to March 17, 2010 to allow other creditors to receive notice of the election. On March 17, 2010, the United States Trustee conducted an election of a Chapter 7 Trustee at the continued Section 341(a) meeting. On or about March 22, 2010, the United States Trustee filed the *Report of Disputed Chapter 7 Trustee Election* [Dkt. No. 489], to which no creditor timely objected. Subsequently, the interim trustee became the Chapter 7 Trustee for the Debtor's bankruptcy case.

## BACKGROUND

5. On December 17, 2008, the Court entered its *Order Authorizing Employment Of Crossroads Management Group LLC As Financial And Business Advisor And Approving Compensation Arrangement Related Thereto* [Docket No. 62]. The Court also entered on December 17, 2008 its *Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "Fee Procedures Order") [Docket No. 60].

6. Prior to the Petition Date, Crossroads received a prepetition security retainer from the Debtor for post-petition services and reimbursement of expenses in the amount of $24,000.00 (the "Retainer"). The Retainer is being held in Crossroads' bank account pending further order of this Court. At this time, Crossroads seeks an Order to allow Crossroads to apply the Retainer to partially satisfy the fees for services rendered and expenses advanced on behalf of the Debtor and the Debtor's estate between August 1, 2010 and March 31, 2010.

7. On June 11, 2009, Ungaretti & Harris LLP ("U&H"), counsel to the Debtor, filed on behalf of Crossroads the *Verified First Interim Application For Allowance Of Compensation And Reimbursement Of Expenses Of Crossroads Management Group LLC, Business And Financial Advisors To The Debtor* (the "First Application") [Docket No. 245]. The First Application covered the time period from the Petition Date through and including March 31, 2009. On or about July 1, 2009, the Court entered an Order granting the relief sought in the First Application, namely: (1) the allowance of $272,747.50 in compensation for fees and the reimbursement of $3,407.95 in expenses in connection with the services; and (2) the payment of $54,549.50, which represented the difference between the total fees and expenses less the total amount of payments already made by the Debtor to Crossroads pursuant to the Fee Procedures Order [Docket No. 256].

8. On September 10, 2009, U&H filed on behalf of Crossroads the *Verified Second Interim Application For Allowance Of Compensation And Reimbursement Of Expenses Of Crossroads Management Group LLC, Business And Financial Advisors To The Debtor* (the "Second Application") [Docket No. 324]. The Second Application covered the time period from April 1, 2009 through and including July 31, 2009. On or about September 30, 2009, the Court entered an Order granting the relief sought in the Second Application, namely: (1) the allowance of $97,965.00 in compensation for fees and the reimbursement of $369.21 in expenses in connection with the services; and (2) the payment of $19,449.00, which represented the difference between the total fees and expenses less the total amount of payments already made by the Debtor to Crossroads pursuant to the Fee Procedures Order [Docket No. 349].

9. Since August 1, 2009, pursuant to the Fee Procedures Order, U&H circulated Crossroads' monthly statements for the months of August 2009, September 2009, October 2009, and November 2009 to the designated creditors and parties in interest. Ten (10) days after U&H circulated each of Crossroads' invoices for those months, no objections having been received to any of them, the Debtor paid Crossroads for 80% of its fees and 100% of its expenses requested in each invoice. In total, Crossroads has already received four (4) checks from the Debtor totaling $39,630.40. Additionally, Crossroads has invoices for December 2009 and the time period spanning January–March 2010 that were not circulated to the Notice Parties.

10. A summary of fees and hours by billing category is attached hereto as <u>Exhibit A</u>. Additionally, Crossroads' monthly billing statements are attached hereto as follows: August 2009 as <u>Exhibit B</u>; September 2009 as <u>Exhibit C</u>; October 2009 as <u>Exhibit D</u>; November 2009 as <u>Exhibit E</u>; December 2009 as <u>Exhibit F</u>; and January–March 2010 as <u>Exhibit G</u>. A summary of Crossroads' monthly statements for the period covered by the Final Application follows:

| MONTH | TOTAL FEES ($) | 80% OF FEES REC'VD ($) | TOTAL EXPENSES ($) |
|---|---|---|---|
| August 2009 | 15,637.50 | 12,510.00 | 0.00 |
| September 2009 | 12,562.50 | 10,050.00 | 557.20 |
| October 2009 | 10,800.00 | 8,640.00 | 0.00 |
| November 2009 | 9,300.00 | 7,440.00 | 0.00 |
| December 2009 | 13,500.00 | 0.00 | 433.20 |
| January–March 2010 | 4,312.50 | 0.00 | 0.00 |
| **TOTALS:** | **66,112.50** | **38,640.00** | **990.40** |

## SERVICES PERFORMED BY CROSSROADS

11. Pursuant to Sections 330 and 331 of the Bankruptcy Code and the generally applicable criteria with respect to time, nature, extent, and value of services performed, all of Crossroads' services are compensable and the compensation requested is fair and reasonable. All the services performed by Crossroads to date were necessary, in Crossroads' billing judgment, and rendered after due consideration of the expected costs and anticipated benefits of such services.

12. John Kolleng was the only Crossroads consultant to have rendered services during the time period covered by the Final Application, therefore, there has been no duplication of services by Crossroads' consultants for which compensation is requested herein. Additionally, from the outset of this case, Crossroads' consultants have avoided recording time entries which contained "lumping" as discussed in *In re Pettibone Corp.*, 74 B.R. 293, 302 (Bankr. N.D. Ill. 1987).

13. Itemized and detailed descriptions of the specific business and financial services rendered to the Debtor by Crossroads are reflected on the monthly billing statements for August 1, 2009 through March 31, 2010. *See generally* Exhibits B–G. Each billing statement sets forth the initials of each consultant, the amount of time spent rendering each service, the day on which such service was rendered, and a description of the nature of the service rendered.

1735945-1

14. A summary of Crossroads' consultants' hourly billing rates, hours billed, and compensation sought for the period covered by the Final Application follows:

| Name | Position | Rate ($/hr) | Hours | Total ($) |
|---|---|---|---|---|
| John Kolleng | Consultant | 375.00 | 176.30 | 66,112.50 |
| | | TOTAL: | 176.30 | 66,112.50 |

## NATURE OF SERVICES PERFORMED BY CROSSROADS

15. As in the First Application and Second Application, Crossroads has divided time charges for services rendered into five categories for the Final Application. Each category is discussed below, including a narrative of the matters involved, a description of the tasks performed, detailed time records, and the results achieved or benefit to the estate, as required by *In re Wildman*, 72 B.R. 700, 708 (Bankr. N.D. Ill. 1987) and *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). The billing categories used by Crossroads in this case are:

| CATEGORY | TOTAL HOURS | FEES ($) |
|---|---|---|
| (01) Cash Management and Cash Flow Analysis | 18.35 | 6,881.25 |
| (02) Assistance with Legal Matters and Review of Legal Motions | 44.25 | 16,593.75 |
| (03) Communications with Creditors, Suppliers, and Vendors | 0.00 | 0.00 |
| (04) Business Operations | 28.10 | 10,537.50 |
| (05) Sale of Assets | 85.60 | 32,100.00 |
| **TOTALS:** | **176.30** | **66,112.50** |

A narrative summary of the services by category follows:

A.      **(01) Cash Management and Cash Flow Analysis**

16.     Crossroads' role relating to cash management and cash flow analysis has been necessarily limited during the time period covered by the Final Application as the Debtor's wind-up neared its final stages. The services rendered by Crossroads in this category consisted primarily of assisting in the preparation of monthly operating reports and meeting periodically with the Debtor's controller to ensure that sufficient cash remained on hand to satisfy ongoing obligations and conclude the Debtor's wind-up. In connection with these services, Crossroads expended approximately 18.35 hours and incurred $6,881.25 in fees.

B.      **(02) Assistance with Legal Matters and Review of Legal Motions**

17.     On numerous occasions, U&H required Crossroads' assistance with legal matters and review of legal documents. For example, Crossroads reviewed the Chapter 11 Plan of Liquidation, Disclosure Statement, and liquidation analysis filed by the Unsecured Creditors Committee at U&H's request to determine whether the Disclosure Statement provided adequate information and, ultimately, whether the Plan could be confirmed as proposed. Crossroads also worked with the Debtor's employees to retrieve information, documents, and business records responsive to settlement negotiations, discovery requests, and answers to pleadings in adversary proceedings, Section 503(b)(9) administrative expense claims, and objections to claims filed in or associated with the Debtor's bankruptcy case. Given the technical nature of certain disputes relating to tooling, pricing per part, and prepetition executory contracts, Crossroads' knowledge of the Debtor's business and records and general assistance were instrumental to U&H's ability to resolve or otherwise advance the various pieces of litigation. After the Debtor's case was converted to a chapter 7 liquidation, Crossroads helped U&H transition administration of the

Debtor's case to the Chapter 7 Trustee. In connection with these services, Crossroads expended approximately 44.25 hours and incurred $16,593.75 in fees.

**C.     (03) Communications with Creditors, Suppliers, and Vendors**

18.    Due to the cessation of all manufacturing activity during Spring 2009 and the subsequent near-complete wind-up of the Debtor's affairs during the time period covered by the Second Application, no services were required of Crossroads under this particular billing category during the time period covered by the Final Application.

**D.     (04) Business Operations**

19.    The Debtor conducted its wind-up during the time period covered by the Final Application with only a small handful of key employees, and Crossroads bore primary responsibility for managing the Debtor's business operations. The services rendered by Crossroads under this matter included the following: advising the Debtor's employees regarding the collection of accounts receivable, storage of business records, and backup of electronic computer data; assisting in assembling information and documents for tax returns; working with insurers, vendors, and utility providers to obtain refunds for the Debtor's estate in connection with the cancellation of policies, programs, and accounts; conferring with employees at the Debtor's Bronson facility regarding production of parts for certain customers; and handling issues relating to management of the Debtor's employees in light of the wind-up of the Debtor's affairs and conversion of its case to a chapter 7 liquidation. In connection with these services, Crossroads expended approximately 28.10 hours and incurred $10,537.50 in fees.

**E.     (05) Sale of Assets**

20.    Crossroads was instrumental in the sale of the Debtor's Bronson property and facility in Winsted, Connecticut. The Debtor's initial motion to sell the Bronson property to J.

Brooks Holdings, LLC was filed in April 2009, however, the sale soon became greatly complicated by environmental issues uncovered during the due diligence process. Crossroads' consultant acted as a liaison between the Debtor and its employees, U&H, the real estate broker, the environmental consultants, and J. Brooks Holdings, LLC and its principal and attorneys; reviewed agreements and proposed changes; participated in negotiations; and even traveled to Winsted, Connecticut on two occasions to facilitate the identification and resolution of environmental issues impeding the sale of Bronson. Ultimately, on January 29, 2010, J. Brooks Holdings, LLC purchased the Bronson property for $800,000, of which the Debtor's estate received $499,319.56 after the payment of the environmental escrow holdback, standard closing costs, and the realtor's commission [Dkt. No. 465]. Also during the time period covered by the Final Application, Crossroads helped to close the sale of the Debtor's Loves Park, Illinois property and facility to Blue Oceans Investment Group, LLC for $545,000, of which the Debtor's estate received $500,397.72 after payment of closing costs and commissions [Dkt. No. 369]. Ultimately, Crossroads assisted in liquidating virtually all of the Debtor's remaining assets (except for the Debtor's interest in the Korean joint venture company) during the period covered by the Final Application, generating over $1,000,000 in proceeds for the estate:

| Approx. Date of Sale | Proceeds from Sale | Description of Assets Sold |
| --- | --- | --- |
| 09/01/2009 | $500,397.72 | To Blue Oceans Investment Group, LLC – the Debtor's former Loves Park facility, including the land, real property, improvements, and personal property |
| 09/14/2009 | $1,390.00 | To JCI – 200 service parts |
| 10/2009 – 01/2010 | $3,085.81 | To Behr Iron and Scrap – various sales of scrap |

| 01/29/2010 | $499,319.56 | To J. Brooks Holdings, LLC – the Debtor's former Winsted, Connecticut facility, including the land, real property, improvements, and personal property |

In connection with these services, Crossroads expended approximately 85.60 hours and incurred $32,100.00 in fees.

## REIMBURSEMENT OF EXPENSES

21.     Crossroads incurred various out of pocket and reimbursable expenses in the total amount of $990.40 in connection with the business and financial services provided to the Debtor in September 2009 and December 2009, for which it now requests reimbursement. A breakdown of the types of expenses is included on the Summary attached hereto as Exhibit A.

22.     Crossroads does not seek reimbursement for expenditures it has incurred in this case which constitute overhead, such as secretarial charges. *In re Adventist Living Ctrs., Inc.*, 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991). Crossroads is seeking reimbursement for airfare incurred by a Crossroads consultant on September 29, 2009 and again on December 2, 2009, when John Kolleng traveled to the Debtor's Homer D. Bronson division in Winsted, Connecticut to meet with the Debtor's environmental consultants regarding remediation issues and, on the September 29th trip, to advance negotiations with the principal of J. Brooks Holdings, LLC, which ultimately purchased the Bronson property and facility in January 2010 for the sum of $800,000 [Dkt. No. 465]. None of Crossroad's numerous trips to and from the Debtor's former facility in Loves Park, Illinois are included. All of the expenses billed to the Debtor were billed in the same manner as Crossroads bills non-bankruptcy clients and are of the type that Crossroads customarily recoups from all of its clients.

23. All of the aforesaid expenses were actually incurred by Crossroads and were necessary in connection with the services provided to the Debtor by Crossroads in this case. All the expenses incurred are specifically allocated to this case and do not represent general overhead or other expenses unrelated to this case.

## BASIS FOR RELIEF

24. Crossroads' Final Application was prepared in accordance with the guidelines established by Bankruptcy Rule 2016, *In re Pettibone Corp.*, 74 B.R. 293 (Bankr. N.D. Ill. 1987), *In re Wildman*, 72 B.R. 700 (Bankr. N.D. Ill. 1987), and this Court. Though the Court has discretion in reviewing a fee petition, it should exercise its discretion with care and fairness in order to promote the goal of encouraging and inducing professionals to practice in the bankruptcy court. *See Pettibone*, 74 B.R. at 306.

25. In addition to services provided directly for the benefit of the estate, Crossroads is also entitled to receive compensation for the preparation of this Final Application. *In re Pettibone Corp.*, 74 B.R. 293, 304 (Bankr. N.D. Ill. 1987). Crossroads will seek compensation for these services in its next fee application.

26. The detailed billing statements attached hereto describe the specific task performed, the consultant performing the task, the number of hours billed for each task (divided into tenths of an hour), the number of hours billed daily and monthly by each consultant, and the hourly rate charged for each consultant. In addition, the expenses incurred are separately listed and described.

27. Crossroads has endeavored to: (a) avoid lumping multiple tasks into a single entry; (b) minimize time spent on interoffice conferences; and (c) provide detail about each task, such as the subject matter of each telephone conference, correspondence, document review, etc.

28.  Crossroads' hourly rates for professionals who performed services for the Debtor between August 1, 2009 and March 31, 2010 are comparable to rates charged by other professionals having the same amount of experience, expertise, and standing for similar services in the Northern District of Illinois. The compensation sought by Crossroads in this Final Application is for ordinary and necessary services rendered to the Debtor, and the fees sought are reasonable.

29.  Crossroads has at all times acted specifically in the best interests of the Debtor and its estate. All services performed by Crossroads and all expenses incurred were reasonable and necessary for the preservation of the Debtor's bankruptcy estate.

## **REQUEST FOR LIMITED NOTICE**

30.  U&H has served Notice of this Final Application on Crossroads' behalf on (i) the office of the United States Trustee; (ii) the Chapter 7 Trustee; (iii) all other parties on the main service list; and (iv) all of the creditors on the 20 Largest Unsecured Creditors list.

31.  Additionally, Federal Rule of Bankruptcy Procedure 2002(a)(6) requires notice of the hearing on this Final Application to be sent to, among others, all creditors. Crossroads requests that the Court limit the notice required by Bankruptcy Rule 2002(a)(6) by excusing the requirement that Crossroads notify every creditor. Serving this Final Application on each creditor individually would be costly to the estate and, given that the United States Trustee, Chapter 7 Trustee, all parties on the main service list, and all creditors on the 20 Largest Unsecured Creditors list will receive this Final Application, would not provide an offsetting benefit to creditors.

## **CONCLUSION**

32. Crossroads has not entered into an agreement or understanding of any kind, expressed or implied, with any entity to share in its compensation received or to be received by Crossroads for services rendered to the Debtor in this case.

33. Over 120 days have elapsed since the time period covered by the Second Application ended (April 1, 2009 through July 31, 2009). Accordingly, pursuant to Sections 330 and 331 of the Bankruptcy Code, Crossroads may present this Final Application for compensation.

**WHEREFORE,** Crossroads Management Group LLC respectfully requests that this Court to enter an order:

(a) Granting the relief requested in this Final Application;

(b) Granting Crossroads' request to limit notice as set forth above and finding that the Notice of the Hearing on this Final Application was proper;

(c) Finding that Crossroads' fees, in the amount of $66,112.50 are reasonable and necessary for services rendered to the Debtor between August 1, 2009 and March 31, 2010;

(d) Finding that the expenses Crossroads incurred in the amount of $990.40 in connection with the services rendered to the Debtor between August 1, 2009 and March 31, 2010 are actual and necessary;

(e) Finding that the payments of $39,197.20 to Crossroads for its fees ($38,640.00) and expenses ($557.20) between August 1, 2009 and March 31, 2010 are reasonable and justified;

(f) Authorizing Crossroads to apply the Retainer to the first $24,000 of its remaining allowed fees ($27,472.50) and expenses ($433.20) in the total amount of $27,905.70, and authorizing the Debtor to pay to Crossroads the balance remaining thereafter ($3,905.70);

(g) Approving as final the interim compensation and reimbursement previously awarded to Crossroads by the Court relating to the First Application ($276,155.45) and the Second Application ($98,334.21); and

   (g) For such other and further relief as this Court deems appropriate.

                Respectfully submitted,

Dated: June 14, 2010      CROSSROADS MANAGEMENT GROUP LLC

                By: _____
                 John Kolleng, President
                CROSSROADS MANAGEMENT GROUP LLC
                918 Sherwood Drive
                Lake Bluff, Illinois 60044
                Tel.: 847-582-9710 | Fax: 847-647-2429
                Email: jkolleng@xroadsmgt.com

*Prepared by Counsel for*
 *Modern Metal Products Co., Debtor*
R. Scott Alsterda, ARDC No. 3126771
Jeffrey H. Bergman, ARDC No. 6194442
Patrick F. Ross, ARDC No. 6296461
UNGARETTI & HARRIS LLP
3500 Three First National Plaza
Chicago, Illinois 60602
Tel.: 312-977-4400 | Fax: 312-977-4405

STATE OF ILLINOIS )
         ) ss.
COUNTY OF COOK  )

## VERIFICATION

  I, John Kolleng, being first duly sworn, on oath state that I have read the foregoing **Verified Third Application For Allowance Of Compensation And Reimbursement Of Expenses Of Crossroads Management Group LLC, Business And Financial Advisors To The Debtor**, and that all the statements made therein are true to the best of my knowledge and belief.

Dated: June 14, 2010

                       _____
                       John Kolleng

SUBSCRIBED and SWORN to before
me this 14th day of June, 2010.

_____
Notary Public

**OFFICIAL SEAL**
**JENELL D SCOTT**
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/16/10

1735945-1             14