**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 08-73908 |
| | ) | |
| MODERN METAL PRODUCTS CO., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Manuel Barbosa |
| | ) | |
| | ) | Hearing: November 9, 2011 at 1:00 p.m. |

**FOURTH INTERIM AND FINAL FEE APPLICATION OF
FREEBORN & PETERS LLP AS COUNSEL TO THE
<u>OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**

Freeborn & Peters LLP ("*F&P*"), counsel to the Official Committee of Unsecured Creditors (the "*Committee*") of Modern Metal Products Co. ("*MMP*" or the "*Debtor*"), hereby submits its Fourth Interim and Final Fee Application (the "*Fee Application*"), seeking (i) interim allowance of compensation and reimbursement of expenses for the period of November 10, 2009 through May 31, 2010 (the "*Interim Application Period*"); and (ii) final allowance of compensation and reimbursement of expenses for the period of January 7, 2009 through May 31, 2010. In support thereof, F&P states as follows:

**<u>FACTUAL AND PROCEDURAL HISTORY</u>**

1.      On December 1, 2008 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Northern District of Illinois, Western Division (the "*Court*").

2.      On January 7, 2009, the Office of the United States Trustee (the "*U.S. Trustee*") appointed the Committee as an official committee to represent the interests of unsecured creditors of the Debtor pursuant to section 1102 of the Bankruptcy Code. The Committee subsequently selected F&P as its counsel.

3. On January 30, 2009, this Court entered the *Order Authorizing the Official Committee of Unsecured Creditors to Retain and Employ Freeborn & Peters LLP as Counsel* (the "*Retention Order*"). The Retention Order stated that F&P shall be compensated for its services and reimbursed for its actual, necessary, and reasonable expenses or other disbursements incurred in connection with such services in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "*Local Rules*") and applicable orders of the Court.

4. The Debtor subsequently sought authority to sell substantially all of its assets through several asset sales, including:

   a. The sale of certain machinery and equipment to Magna Seating of America, Inc. ("Magna") – one of the Debtor's largest customers – which allowed the Debtor to reduce unsecured claims in the approximate amount of $200,000.00 and receive approximately $100,000.00 in net proceeds.

   b. The sale of the majority of assets located at the facility in Loves Park, Illinois (the "*Loves Park Facility*") and Ciudad Juarez, Mexico to Gill Industries, Inc. ("*Gill*"), which resulted in (i) the full payment of the Debtor's senior secured lender, JPMorgan Chase, and (ii) $250,000.00 in cash to the Debtor.

   c. The sale of the Debtor's Metal Finishing Division and the real estate associated with that division to K&J Finishing, Inc. ("K&J") for approximately $150,000.00.

   d. The sale of the remaining assets at the Loves Park Facility at a public auction, which resulted in proceeds of approximately $215,000.00.

e. The sale of the real property, improvements, and personal property relating to the Loves Park Facility to Blue Oceans Investment Group, LLC for a purchase price of $625,000.00 (the "*Blue Oceans Transaction*").[1]

d. The sale of the remaining property located in Winsted, Connecticut (the "*Winsted Property*") to J. Brooks for $800,000.00.

5. In August of 2009, the Committee filed its Plan of Liquidation (the "*Plan*") and Disclosure Statement with respect thereto (the "*Disclosure Statement*"), seeking to establish a liquidating trust to administer the balance of the Debtor's estate.

6. Although the Debtor initially supported the Plan, it subsequently decided to move to convert the case to a chapter 7, and filed its Motion to Convert the Case to a Chapter 7 (the "*Conversion Motion*") on October 13, 2009. The Court granted the Conversion Motion on December 23, 2009 over the Committee's objection.

7. The case was converted to a chapter 7 case, effective January 11, 2010 (the "*Conversion Date*").

**PRIOR F&P FEE APPLICATIONS**

8. On June 4, 2009, F&P filed with this Court its first interim fee application seeking compensation for services provided by F&P on the behalf of the Committee in the amount of $112,416.50 and reimbursement of expenses in the amount of $1,343.33 for the period from January 7, 2009 through and including April 30, 2009 (the "*First Interim Fee Application*"). The total amount sought under the First Interim Fee Application was $113,759.83.

9. On June 24, 2009, this Court entered an order approving F&P's First Interim Fee Application and authorizing payment in full. F&P has been fully compensated for the amounts

---

[1] The purchase price for the Blue Oceans Transaction was subsequently reduced to $545,000.00 on account of environmental issues.

3

requested in the First Interim Fee Application.

10. On September 9, 2009, F&P filed with this Court its second interim fee application seeking compensation for services provided by F&P on the behalf of the Committee in the amount of $76,961.50 and reimbursement of expenses in the amount of $1,634.77 for the period from May 1, 2009 through and including August 31, 2009 (the "*Second Interim Fee Application*"). The total amount sought under the Second Interim Fee Application was $78,596.27.

11. On September 30, 2009, this Court entered an order approving F&P's Second Interim Fee Application and authorizing payment in full. F&P has been fully compensated for the amounts requested in the Second Interim Fee Application.

12. On November 24, 2009 F&P filed with this Court its third interim fee application seeking compensation for services provided by F&P on the behalf of the Committee in the amount of $145,387.50 and reimbursement of expenses in the amount of $13,115.16 for the period from September 1, 2009 through and including November 24, 2009 (the "*Third Interim Fee Application*"). The total amount sought under the Third Interim Fee Application was $158,502.66. The Court denied the Third Interim Fee Application based upon, *inter alia*, objections raised by the Office of the United States Trustee (the "*U.S. Trustee*").

13. F&P subsequently filed a *Motion to Authorize Payment in Accordance with Administrative Order Establishing Procedures for Interim Compensation* (the "*Payment Motion*"), seeking allowance and payment in the aggregate amount of $158,502.66, which is equal to $145,387.50 in fees and $13,115.16 in expenses for the period of September 1, 2009 through November 24, 2009. The U.S. Trustee filed a partial objection to the Payment Motion, but allowed the entry of an order authorizing a partial payment (the "*Partial Payment*") of

4

$61,150.00 in fees and $11,876.18 in expenses, for a total of $73,026.18.

14. F&P and the U.S. Trustee filed pleadings regarding the remaining amounts sought under the Payment Motion, and on May 19, 2010, this Court entered an order approving payment of additional compensation in the amount of $73,454.50 and expenses in the amount of $692.13, such that F&P has been allowed a total of $147,172.81 on account of the Payment Motion. Prior to the Conversion Date, F&P received payment of $20,000.00 for the amounts requested in the Payment Motion. Accordingly, as stated in this Court's May 19 Order, a balance of $127,172.81 has been allowed, but remains unpaid until funds become available to pay such claims in accordance with sections 507(a) and 726 of the Bankruptcy Code.

## RELIEF REQUESTED

15. F&P seeks interim approval of compensation in the amount of $37,104.50 and reimbursement of expenses in the amount of $2,759.38, for a total of $39,863.88, for services rendered on behalf of the Committee from November 10, 2009 through May 31, 2010 (the "*Fee Application Period*").[2]

16. Further, F&P seeks final allowance of all amounts previously approved by this Court on an interim basis, as well as such amounts requested for the first time in this Fee Application.

17. Accordingly, F&P seeks the entry of an order: (1) approving F&P $37,104.50 in compensation and $2,759.38 in reimbursable expenses for the period of November 10, 2009 through May 31, 2010 as a chapter 11 administrative expense of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code; and (2) granting final approval of all

---

[2] This Fee Application seeks interim allowance of fees and expenses incurred during a portion of the time period covered by the Payment Motion, as those amounts were inadvertently excluded from the Payment Motion. F&P is not seeking approval of amounts previously presented to, or disallowed by this Court.

5

compensation and expenses incurred for the period of January 7, 2009 through May 31, 2010; and (3) authorizing payment to F&P in the amount of $167,036.69 when funds become available to pay such claims in accordance with sections 507(a) and 726 of the Bankruptcy Code.

## **DISCUSSION**

18.   Section 330(a) of the Bankruptcy Code provides, in pertinent part:

> [T]he court may award . . . reasonable compensation for actual, necessary services rendered by the…attorney and by any paraprofessional person…and…reimbursement for actual, necessary expenses…. In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

19.   The Seventh Circuit Court of Appeals has stated:

> The computation of hourly fees depends on the number of hours "reasonably" expended, the hourly rate of each [professional], the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risk and the results obtained, and a complex of other considerations under the heading of "billing judgment."

*Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986).   Additionally, other Circuit Courts of appeal have recognized that:

> [I]t is important for the court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation.  It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner.  On the other hand, it is also possible that [the client] would not have enjoyed the success it did had its counsel managed matters differently.

6

*Boston and Main Corp. v. Moore*, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

20.    In reviewing the Fee Application, the Court should be guided by the Seventh Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

> [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.

*In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992); *see Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984) (section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts…. Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts.").

21.    In *Continental Securities*, the Seventh Circuit found error in the lower court's practice of: (a) placing ceilings on the hourly rates of all lawyers; (b) refusing to allow paralegal services to be compensated at market rate; (c) refusing to award a risk multiplier; (d) making large across-the-board cuts in research time; (e) making large across-the-board cuts in conference time; and (f) refusing to allow attorneys to bill computerized legal research services (*e.g.*, LEXIS). 962 F.2d at 568-70.

22.    In evaluating the Fee Application, the Court should also consider the novelty and difficulty of the issues presented, the skill required to perform the legal services properly, the preclusion of other employment caused by F&P's retention in this case, the customary fees charged in similar cases, the existence of time limits under which the services were rendered, the

7

results obtained, the experience and ability of the attorneys involved, and the amount of awards of compensation in similar cases. *See In re Alberto*, 121 B.R. 531, 534 (Bankr. N.D. Ill. 1990).

## I. Summary of Compensation and Expenses for the Interim Application Period.

23. F&P's hourly rates of compensation for attorneys and para-professionals during the Fee Application Period range from $110 to $710; however, no professional with an hourly rate in excess of $550 (as discounted) has performed services hereunder. Those rates are comparable to rates charged by other practitioners having the same amount of experience, expertise, and standing for similar services in this jurisdiction. F&P consistently and consciously made every reasonable effort to represent the Committee in the most economical, efficient, and practical manner possible.

24. A summary of the compensation requested during the Interim Application Period for each of F&P's professionals and para-professionals is set forth below:

| Timekeeper | Title | Year of Illinois Bar Admission | 2009 Hourly Rate | 2010 Hourly Rate | Total Hours | Total Compensation Requested |
|---|---|---|---|---|---|---|
| Eggert, Devon J. | Associate | 2006 | $265.00 | $275.00 | 29.4 | $8,040.00 |
| Fawkes, Thomas R | Partner | 2002 | $420.00 | $435.00 | 7.6 | $3,199.50 |
| Hammer, Aaron L | Partner | 1997 | $535.00 | $550.00 | 4.9 | $2,630.50 |
| Jackiw, Brian J. | Associate | 2008 | $245.00 | $250.00 | 8.9 | $2,183.50 |
| Lauter, Richard S. | Partner | 1982 | $495.00 | $510.00 | 32.3 | $16,219.50 |
| Morris, Wendy E. | Associate | 2003 | $285.00 | $295.00 | 0.2 | $57.00 |
| Sheldon, Kathryn C. | Paralegal | N/A | $190.00 | $195.00 | 21.5 | $4,151.50 |
| Witz, James M. | Partner | 1992 | $445.00 | $445.00 | 1.4 | $623.00 |
| | | | | **TOTAL:** | 106.2 | $37,104.50 |
| | | | | **BLENDED RATE** | | $349.38 |

25. The services F&P provided and expenses incurred during the Interim Application Period can be summarized as follows:

8

**A.    General                                                                              $4,550.00**

26.    F&P spent 15.1 hours at a cost of $4,550.000 on general matters. This category generally includes time spent reviewing incoming pleadings, correspondence, and notices, preparing for and attending Court hearings on general case matters, corresponding with parties-in-interest concerning general case matters, and performing necessary administrative tasks typically associated with a committee representation. This category also includes matters which encompass more than one other discrete category. A breakdown of all time included in the General Matters category is itemized by month and attached hereto as *Exhibit A*.

**B.    Fee Applications                                                              $20,072.00**

27.    F&P spent 56.50 hours at a cost of $20,072.00 with respect to preparing fee applications. The compensation F&P seeks in this category, however, does not include any time spent preparing fee applications after the Conversion Date. A breakdown of all time included in the Fee Applications category is itemized by month and attached hereto as *Exhibit B*.

**C.    Defense of Fee Applications                                              $8,897.00**

28.    F&P spent 27.1 hours at a cost of $8,897.00 in defending its fee applications from the objections of the U.S. Trustee. Time spent defending fee applications is compensable. *See In re Spanjer Bros., Inc.,* 203 B.R. 85, 93 (Bankr. N.D. Ill. 1996) (stating that counsel is entitled to reasonable compensation for preparation *and* litigation of fee applications). A breakdown of all time included in this category is itemized by month and attached hereto as *Exhibit C*.

**D.    Reclamation Claims                                                            $266.00**

29.    F&P spent 0.8 hours at a cost of $266.00 on issues related to claims asserted pursuant to sections 546(c) and 503(b)(9) of the Bankruptcy Code (collectively, "*Reclamation Claims*"). Time spent in this category for the Fee Application Period primarily includes

9

reviewing, and assisting in the resolution of, the objections to the Reclamation Claims of Vision Plastics and Korea Modern Metal Co., Ltd. A breakdown of all time included in the Reclamation Claims category is itemized by month and attached hereto as *Exhibit D*.

  **E.**  **Litigation**                 **$240.50**

  30.  F&P spent 0.50 hours at a cost of $240.50 on issues related to litigation. This category primarily includes time spent reviewing the Debtor's avoidance action against Virtual Engineering. A breakdown of all time entries included in the Litigation category are itemized by month and attached hereto as *Exhibit E*.

  **F.**  **Conversion Motion**            **$3,079.00**

  31.  F&P spent 6.2 hours at a cost of $3,079.00 relating to the Debtor's Conversion Motion. Most of the time in this category relates to finalizing the Committee's Sur-Reply in opposition to the Conversion Motion, and preparing for and attending the final hearing on the Conversion Motion. All time entries included in this category are itemized by month and attached hereto as *Exhibit F*.

  **G.**  **Expenses**                 **$2,759.38**

  32.  A detailed itemization of all expenses incurred is set forth in *Exhibit G* attached hereto. Expenses during the Fee Application Period were incurred in the following categories:

    (a) <u>Photocopying</u>: F&P incurred copying and printing charges in the amount of $394.10. F&P charges for copies at the rate of $0.10 per page. F&P maintains a record of in-house copies made through a computerized system. This procedure requires an operator to key in a client's code number on a keypad attached to the copier.

    (b) <u>Outside Teleconferencing, Mailing and Miscellaneous Expenses</u>: F&P incurred expenses in the amount of $1,054.84 in connection with teleconferencing and mailing

10

services. These expenses were necessary in order to conduct Committee meetings telephonically and participate telephonically in court hearings at significant cost savings to the estate compared to requiring the Committee members and its counsel to meet in person, or for counsel to travel to Rockford, Illinois for court hearings. This category also includes necessary to mail out documents and provide for efficient delivery to the parties requiring notice in this case. Specifically, this category includes the charges necessary to properly serve the Plan and Disclosure Statement on creditors and other parties-in-interest. This category also includes miscellaneous expenses such as travel and meal expenses for working late. F&P makes no profit on these expenses.

(c)     Computer Legal Research: Computerized research services, charges for which amounted to $479.38, allowed F&P to reduce the time expended in researching complex areas of law. The information obtained from such computer assisted research was instrumental in preparing and arguing certain pleadings. The Seventh Circuit Court of Appeals has stated that even the most experienced attorney must conduct (or have conducted for her) research to evaluate changes in the law, address new issues, and refresh her recollection. *Continental Illinois Securities Litigation*, 962 F.2d at 570. Failure to do so would be to court sanctions or a malpractice suit. *Id.*

(d)     Transportation: Transportation, charges for which totaled $831.06, allowed F&P the opportunity to attend significant Court hearings in person – such as those relating to the Plan, Disclosure Statement and the Conversion Motion. F&P mitigated transportation charges by attending hearings telephonically whenever appropriate.

33. All expenses incurred by F&P in connection with its representation of the Committee were ordinary and necessary expenses. All expenses billed to the Committee were billed in the same manner as F&P bills non-bankruptcy clients.

34. F&P does not bill its clients or seek compensation in this Fee Application for certain overhead expenses, such as local and long-distance telephone calls, secretarial services, and facsimile transmissions. Instead, such expenses are factored into F&P's hourly rates. F&P has not included certain other charges described herein in its overhead because it has determined that it is fairer to its smaller clients who use proportionately less of these services to have these expenses billed separately.

II.     **Summary of Compensation and Expenses for the Entire Case.**

35. F&P hereby incorporates its First, Second and Third Interim Fee Applications, the Payment Motion (which seeks approval of the amounts set forth in the Third Interim Fee Application), and exhibits to all such pleadings in support of final approval of all compensation and expenses previously approved by this Court, which total $323,982.50 in fees and expenses in the amount of $15,546.41 for a total of $339,528.91.

36. No agreement or understanding exists between F&P and any other person for the sharing of compensation received or to be received in connection with this case, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and the Local Rules.

37. F&P reserves the right to correct, amend, or supplement this Fee Application for any reason.

## BENEFIT TO THE ESTATE

38. F&P's services certainly benefitted the Committee during this case, and thus, are fully compensable. F&P worked cooperatively with the Debtor for a significant portion of the case in order to effectuate the sale of the Debtor's assets through several transactions and to otherwise administer the Debtor's estate.

39. After the Debtor withdrew its support for the Committee's proposed Plan, F&P pressed forward, as the Committee and F&P believed the Plan represented the greatest possibility for general unsecured creditors to receive a meaningful distribution. This also served as the reason the Committee and F&P chose to oppose the Conversion Motion. Although opposing the Conversion Motion ultimately proved unsuccessful, F&P submits that the opposition was proper in order to fulfill the Committee's duties to its constituents.

## NOTICE

40. Pursuant to Bankruptcy Rule 2002(a)(6), twenty-one days' notice of this Fee Application has been provided to: (a) the chapter 7 trustee; (b) the Debtor and its counsel; (c) the Office of the United States Trustee; (d) all parties who have filed a request to receive notice pursuant to Bankruptcy Rule 2002; and (e) all creditors and parties-in-interest listed on the Debtor's creditor matrix.

**WHEREFORE**, F&P respectfully requests that the Court enter an order:

(a) Allowing F&P, on an interim basis, $37,104.50 in compensation and $2,759.38 in expenses for the Interim Application Period as a chapter 11 administrative expense of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(b) Allowing F&P, on a final basis, $361,087.00 in compensation and $18,305.79 in expenses for all services provided to the Committee as a chapter 11 administrative expense of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code; and

(c) Directing the chapter 7 trustee to pay to F&P all amounts requested herein as soon as funds become available to pay such claims in accordance with sections 507(a) and 726 of the Bankruptcy Code; and

(d) Granting such other and further relief as the Court deems just and proper.

Dated:  October 18, 2011                    **FREEBORN & PETERS LLP**

By:     /s/ Richard S. Lauter
Richard S. Lauter (No. 6182859)
Devon J. Eggert (No. 6289425)
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone:  312.360.6000
Facsimile:   312.360.6520